TROY A. VALDEZ, State Bar No. 191478
ERIN M. DOYLE, State Bar No. 233113
SHEILA A. KHAN-VARIBA, State Bar No. 219434
VALDEZ NOOR TODD & DOYLE LLP
116 New Montgomery Street, Suite 210
San Francisco, CA 94105
Telephone: (415) 202-5950
Facsimile: (415) 202-5951
Email: tvaldez@vsnlaw.com
Email: edoyle@vsnlaw.com
Email: skhan-variba@vsnlaw.com

Attorneys for Plaintiffs/Counter-Defendants
IMTIAZ KHAN, *et al.*

THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

IMTIAZ KHAN, an individual, TIM MORRIS, an individual, RICK SEISINGER, an individual, and NEELESH SHAH, an individual,

Plaintiffs,

v.

K2 PURE SOLUTIONS, L.P., a Delaware limited partnership, K2 PURE SOLUTIONS NOCAL, L.P., a Delaware limited partnership, K2 PURE SOLUTIONS PITTSBURG, L.P., a Delaware limited partnership and DOES 1 through 10, inclusive,

Defendants

K2 PURE SOLUTIONS, L.P., a Delaware limited partnership,

Counter-claimant,

v.

IMTIAZ KHAN, an individual, TIM MORRIS, an individual, RICK SEISINGER, an individual, and NEELESH SHAH, an individual,

Counter-defendants.

Case No.: 3:12-cv-05526-WHO

**PLAINTIFFS NEELESH SHAH, IMTIAZ KHAN AND RICK SEISINGER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON THEIR FIRST, SECOND AND NINTH CAUSES OF ACTION**

Date: August 28, 2013
Time: 2:00 p.m.
Judge: Hon. William H. Orrick
Courtroom: 2
Floor: 17
Trial Date: June 9, 2014
Complaint Filed: October 15. 2012
Case Removed: October 26, 2012

## I. INTRODUCTION

The material facts at issue concerning Plaintiffs' claims for declaratory relief and unfair business practices are not in dispute. Plaintiffs' respective employment agreements with Defendants contain, among other terms, covenants not to compete and an Ohio choice of law provision. Defendants aggressively attempted to enforce these covenants against Plaintiffs – individuals who had worked in California for Defendants and later resigned to work for another California employer. After Plaintiffs resigned their employment with Defendants, Defendants simultaneously launched dual lawsuits against Plaintiffs in two different jurisdictions outside of California, transforming the enforceability of the parties' employment agreements into a ripe, justiciable legal issue. Defendants mounted these suits to punish Plaintiffs for voluntarily leaving their employ and saddle them with exorbitant defense legal fees. Defendants have succeeded on both fronts despite the fact that the covenants at issue are unenforceable under California law and their use by Defendants constitute unlawful business practices proscribed by California Business and Professions Code Section 17200.

Further, California law —and not Ohio law—governs Plaintiffs' employment agreements with K2. Defendants, as revealed by Plaintiff's offer letters, hired Plaintiffs to work in California. Plaintiffs worked for Defendants in California throughout their employment, including at the time of their resignations. Plaintiffs also resigned their California employment with Defendants to work for another employer doing business in California. These facts are undisputed. Applying Ohio law in this case would eviscerate California's fundamental public policies and flout well-established choice of law principles. Accordingly, as detailed below, this Court should grant partial summary judgment in favor of Plaintiffs on their First, Second and Ninth Causes of Action, and declare that the non-compete and Ohio choice of law provisions are unenforceable against them.

\\\

\\\

\\\

## II. STATEMENT OF PERTINENT FACTS

### A. The Parties And Their Noncompetition Agreements

Defendants K2 Pure Solutions, LP, K2 Pure Solutions NoCal, L.P. and K2 Pure Solutions Pittsburg, L.P. ("K2" or "Defendants") manufacture and distribute bleach, caustic soda and other chlor-alkali related products. *See* Court Docket # 43 (First Amended Counterclaim ("FACC"), p. 22 at ¶ 6.) Plaintiffs Imtiaz Khan ("Khan"), Rick Seisinger ("Seisinger") and Neleesh Shah ("Shah") are all former employees of K2. Declaration of Imtiaz Khan ("Khan Dec.") at ¶ 2; Declaration of Neelesh Shah ("Shah Dec.") at ¶ 2; Declaration of Rick Seisinger ("Seisinger Dec.") at ¶ 2. As a condition of their hire by K2, Khan, Seisinger and Shah each signed a written agreement with Defendant K2 Pure Solutions, LP entitled "Noncompetition and Confidentiality Agreement" (the "Noncompetition Agreement" or collectively "Noncompetition Agreements"). Khan Dec. ¶ 3, Exhibit ("Ex.") B, Seisinger Dec. ¶ 3, Ex. B, Shah Dec. ¶ 3 Ex. B. K2 Pure Solutions, LP is a Delaware limited partnership with its principal place of business located in Uniontown, Ohio.[1] Court Docket #43 (FACC, p. 21, ¶ 1).

The Noncompetition Agreements contain nearly identical terms. As its title suggests, each of the agreements contains covenants not to compete that purport to prohibit Plaintiffs from working or consulting with a competitor within 300 miles of an existing or future K2 facility. Specifically, Paragraph 2(c)(i) of the Noncompetition Agreements provide that for a period of one year following the termination of their employment with K2, each Plaintiff cannot:

> [o]wn, manage, control, be employed by, consult with, finance or otherwise provide services, information or assistance to any person or entity which (A) competes with the Company in the manufacture, processing or distribution of bleach and related chemical products to commercial customers and (B) is located within 300 miles away of any existing plant operated by the Company or any location the Company has specifically identified for a future plant.

1 For the purposes of summary adjudication only, Plaintiffs will assume this fact as true.

-2-

MEMO. OF POINTS AND AUTH. ISO PLTFS' MOTION FOR PARTIAL SUMM. JUDG. ON THEIR FIRST, SECOND AND NINTH CAUSES OF ACTION
United States District Court, Northern, Case No. 12-cv-05526-WHO

Khan Dec. ¶ 3, Ex. B, ¶ 2(c)(i); Seisinger Dec. ¶ 3, Ex. B, ¶ 2(c)(i); Shah Dec. ¶ 3, Ex. B, ¶ 2(c)(i).

The Noncompetition Agreements further provide that for one year following the termination of their employment with K2, Plaintiffs cannot:

> [s]olicit, hire, recruit, or otherwise engage the services of any person who then currently is, or who at any time during Employee's employment with the Company was, an employee or independent contractor of the Company, or otherwise encourage or induce any such person to discontinue his or her relationship with the Company.

Khan Dec. ¶ 3 Ex. B ¶ 2(c)(iii); Seisinger Dec. ¶ 3 Ex. B ¶ 2(c)(iii); Shah Dec. ¶ 3 Ex. B ¶ 2(c)(iii).

Each of the Noncompetition Agreements contains an Ohio choice of law provision that states, "This Agreement and any disputes arising thereunder shall be governed by the laws of the State of Ohio without regard to any State's choice of law, rules or principles." *Id.*, Exs. B (¶ 6 respectively). Khan, Shah and Seisinger each signed the Noncompetition Agreements on November 19, 2007, April 9, 2008 and November 30, 2010 respectively. *Id.*

**B. Khan Worked For K2 For Multiple Years in California Before Resigning to Work for Another Employer in California**

Khan was and remains a California employee. At the time of his hire by K2, in addition to the Noncompetition Agreement, K2 provided Khan with an offer letter dated November 16, 2007. Khan Dec. ¶ 3. K2 offered Khan the position of Plant Manager at one of its future sites in California, which Khan accepted. Khan Dec. ¶ 4. K2 did not have an office or facility in Ohio (or in California) at the time it offered Khan this position. *Id.* Consequently, Khan worked for K2 out of his home and co-worker's home both located in Ohio, and made multiple trips back and forth to California in the performance of his work duties until his relocation to California in May 2009. *Id.*

Throughout his tenure, Khan regularly performed work for K2 in California. Khan Dec. ¶ 2. Indeed, as stated above, Khan's offer letter contemplates him doing so. Khan Dec. ¶ 3, Ex.

A. His offer letter unambiguously states that he would be the Plant Manager "of one or more designated K2 plants ***in the State of California***" and ***"[i]t is anticipated that you and your family will relocate to the State of California***." *Id.* (emphasis added). Accordingly, with financial assistance from K2, Khan ultimately relocated from Ohio to California in May 2009. Khan Dec. ¶ 5. K2 eventually chose Pittsburg in Contra Costa County, California as the site for its manufacturing plant (the "Pittsburg facility"), where Khan (and the other Plaintiffs) worked continuously until his resignation. *Id.*

During the time Khan worked at the Pittsburg facility, he lived in Contra Costa County. *Id.* After nearly five years of at-will employment with K2, in September 2012 Khan voluntarily resigned and accepted employment with Molycorp, Inc. ("Molycorp"), another company doing business in California. Khan Dec. ¶¶ 2, 6. Khan works at Molycorp's Mountain Pass site in California. Khan Dec. ¶ 7. Presently, Khan is paid by Molycorp as a California employee. *Id.*

**C. Shah Worked For K2 For Multiple Years Before Resigning To Work For Another Employer In California**

Shah was and remains a California employee. At the time of his hire by K2, in addition to the Noncompetition Agreement, K2 provided Shah with an offer letter dated April 7, 2008. Shah Dec. ¶ 3, Ex A. K2 offered Shah the position of Instrumentation and DCS Controls Engineer, which he accepted. Shah Dec. ¶ 4. Shah's employment with K2 was to be carried out in California. Shah's offer letter states that he "will be responsible for the design, construction and start-up of ***K2 plants in the State of California***." *Id.,* Ex. A. (emphasis added). At the time of Shah's hire, K2 did not have an operational facility in California. *Id.* Therefore, Shah initially worked for K2 in Ohio, but he regularly travelled back and forth to California to perform services for K2 until his relocation to California. *Id.* Between December 2010 through May 2011, Shah traveled to California approximately 3 to 4 times per month to the Pittsburg facility. During Shah's tenure, he spent the majority of his time working for K2 in California and worked solely on California projects. *Id.*

By letter dated May 24, 2011, K2 offered Shah the new position of Process Controls Manager, also located at the Pittsburg facility. Shah Dec. ¶ 5, Ex. C. This letter is on K2 letterhead bearing the address of K2's Pittsburg facility (950 Loveridge Road, Pittsburg CA 94568). *Id.* In this role, Shah reported to his supervisor, who also worked at the Pittsburg facility. *Id.* With financial relocation assistance from K2, Shah with his family moved to Contra Costa County, California in July 2011. Shah Dec. ¶ 6.

After over four years of at-will employment with K2, in October 2012, Shah voluntarily resigned his employment with K2 and thereafter began working for Molycorp at its Mountain Pass, California site. Shah Dec. ¶¶ 2, 8. Shah continues to work for Molycorp at its Mountain Pass site and is paid as a California employee. Shah Dec. ¶¶ 9,10.

**D. Seisinger Also Joins Molycorp In California After Working Several Years For K2 In California**

In addition to the Noncompetition Agreement, K2 provided Seisinger with an Employment Agreement dated September 15, 2010 ("Employment Agreement") in connection with his hire. K2 offered Seisinger the position of Production Manager. Seisinger Dec. ¶ 3, Ex. A. The Employment Agreement specifies that the place of Seisinger's employment was K2's Pittsburg facility in California. *Id.,* ¶ 4 (emphasis added*.)* The Employment Agreement also refers to the Pittsburg site as "***K2's California Base of Operations***." *Id.* The Employment Agreement further states that its terms are governed by California law. *Id.* Seisinger was living in Oregon at the time he received K2's job offer, but he worked for K2 only in California. Seisinger Dec. ¶ 3. Throughout the course of his employment with K2, Seisinger never performed any work for K2 in Ohio or anywhere else outside of California. Seisinger Dec. ¶ 5. Throughout Seisinger's employment with K2, he lived in Contra Costa County. *Id.*

After over two years of at-will employment with K2, Seisinger voluntarily resigned in July 2012 and later accepted employment with Molycorp. Presently, Seisinger works at Molycorp's Mountain Pass, California site and is paid as a California employee. Seisinger Dec. ¶ 6.

\\\

\\\

\\\

**E. Despite Overwhelming Contrary Evidence, K2 Contends That Ohio Law Governs The Noncompetition Agreements**

There is no dispute that: (1) Plaintiffs were hired by K2 with the express intention that they work in California; (2) K2 subsidized each of their moves to California; (3) Plaintiffs performed their employment agreements in California; and (4) Plaintiffs were paid by K2 as California employees while they worked in California. Nevertheless, K2 contends that the Ohio choice of law provision in the Noncompetition Agreements controls. Court Docket # 18 (Joint Case Management Statement filed February 21, 2013, p. 6, lines 3-8).

**F. K2 Vigorously Attempts To Enforce Its Noncompetition Agreements Against Plaintiffs In Two Separate Jurisdictions Outside of California Creating An Actual Controversy**

Only after Plaintiffs notified K2 of their intention to resign their employment did K2 threaten to enforce the Noncompetition Agreements against them. *See* Khan Dec. ¶ 7, Seisinger Dec. ¶ 6, Shah ¶ 9. On October 12, 2012, K2 simultaneously initiated dual actions against Plaintiffs in Nevada and Ohio Courts claiming that the Noncompetition Agreements were valid and enforceable, and that Plaintiffs' employment with Molycorp violated the restrictive covenants in the Noncompetition Agreements, and seeking, among other remedies, declaratory and injunctive relief. Declaration of Troy A. Valdez, Esq. ("Valdez Dec.") at ¶ 3. K2 sued Seisinger and Plaintiff Tim Morris in Ohio and Khan and Shan in Nevada. *Id.* The Nevada Court denied K2's petition for a preliminary injunction and, upon the filing of a voluntary dismissal *without prejudice* by Defendants, ordered the dismissal of K2's action on January 9, 2013. Valdez Dec. ¶ 5, Ex. B. The Ohio Court, in turn, transferred K2's action against Plaintiffs to California on grounds that "[Khan's and Shah's] contracts clearly contemplated that they would ultimately work in California. The work that they did perform in Ohio was directed

-6-

MEMO. OF POINTS AND AUTH. ISO PLTFS' MOTION FOR PARTIAL SUMM. JUDG. ON THEIR FIRST, SECOND AND NINTH CAUSES OF ACTION
United States District Court, Northern, Case No. 12-cv-05526-WHO

toward ultimately building a facility in California.  And finally, any alleged breach of the agreement occurred in California." Valdez Dec. ¶ 4. Ex. A.

On October 15, 2012, Plaintiffs filed their own complaint against K2 in Contra Costa County Superior Court, which K2 thereafter removed to this federal Court on October 26, 2012.  Court Docket # 1.  The Second Amended Complaint is the operative complaint, and the Parties' claims and counterclaims are consolidated before this Court.  Court Docket # 42.  Plaintiffs now seek judicial declarations that the restrictive covenants in the Noncompetition Agreements are void as a matter of law and cannot be used to interfere with their present employment with Molycorp or any other entity, and that the Ohio choice of law provision contained in Seisinger's, Shaw's and Khan's contracts, is inapplicable.  Plaintiffs also seek a judgment that K2's use of the facially void noncompete provisions in the Noncompetition Agreements constitutes an unlawful and unfair business practice.  Accordingly, Plaintiffs now move for partial summary judgment on their First Cause of Action (for Declaratory Relief), Second Cause of Action (for Declaratory Relief) and Ninth Cause of Action (for Unfair Business Practices in violation of California Business and Professions Code Section 17200).

## III. STANDARD OF REVIEW FOR PARTIAL SUMMARY JUDGMENT

Summary judgment or partial summary judgment is appropriate when there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. § 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Delta Sav. Bank v. United States,* 265 F.3d 1017, 1021 (9th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and "designate specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*. 475 U.S. 574, 586 (1986).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*.  Moreover, "[w]here the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id*. at 587.

The question of whether a restrictive covenant is enforceable is a pure question of law appropriate for summary adjudication. *See, e.g., Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F.Supp.2d 1084, 1091 (N.D. Cal. 2009) (granting summary judgment where assignment of inventions agreement unlawfully restricted employee mobility and constituted an "an unlawful non-compete provision under section 16600"); *Scott v. Snelling and Snelling, Inc*., 732 F. Supp. 1034, 1045 (N.D. Cal. 1990) (summary judgment on Section 16600 claim involving facially void non-compete clause); *Arkley v. Aon Risk Services Cos., Inc.*, Case No. CV 12-1966 DSF (RZx) (C.D. Cal June 13, 2012) (invalidating noncompetition agreement); *see also Zajicek v. Koolvent Metal Awning Corp. of Am.*, 283 F.2d 127, 132 (9th Cir. 1960) (finding provision facially void under section 16600). "There is nothing for a jury to decide where the evidence is 'so one-sided that one party must prevail as a matter of law.'" *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). Here, evidence of the invalidity of K2's noncompete obligations is "so one-sided," that Plaintiffs must prevail on their First, Second and Ninth Causes of Action as a matter of law.

## IV. ARGUMENT

In a diversity case, such as this one, the district court must apply the substantive law of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because K2 removed this case alleging diversity jurisdiction, California substantive law including its choice of law rules, applies. *Id.*

### A. Plaintiffs Are Entitled To Summary Judgment On Their First Claim For Declaratory Relief

#### 1. This Matter is Justiciable And Ripe For Determination By This Court

It is beyond dispute that an actual controversy exists between the Parties concerning the validity of the Noncompetition Agreements. Federal Rules of Civil Procedure 56(a) and (b)

expressly provide that a party seeking a declaratory judgment may move for partial summary judgment. Fed. R. Civ. P. §56. "In a case of actual controversy within its jurisdiction… any court of the United States… may declare the rights and other legal relations of an interested party seeking such a declaration." 28 U.S.C. 2201. Further, under California state law, whether an action is justiciable for purposes of California Code of Civil Procedure Section 1060 is a matter entrusted to the sound discretion of the trial court. *See Tehachapi-Cummings County Water Dist. v. Armstrong*, 49 Cal.App.3d 992, 998 (1975); Cal. Code Civ. Proc. §1060.

Here, Plaintiffs seek declaratory relief regarding the enforceability and validity of the noncompete covenants in the Noncompetition Agreements, under which K2 has brought suit against Plaintiffs not just once, but ***twice*** in two different jurisdictions. Moreover, K2's Nevada action was dismissed without prejudice. Valdez Dec. ¶ 4; Ex. A. K2 can therefore reinstitute its Nevada suit against Plaintiffs at any time. *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881, 893 fn. 6. (1998) (finding that defendant employer cannot credibly challenge the justiciability of the parties' dispute concerning the validity of noncompete provisions in plaintiff's employment agreement where defendant employer made multiple threats of litigation and actually filed a lawsuit.) Accordingly, an actual controversy exists involving justiciable issues concerning the Noncompetition Agreements and the parties' respective obligations thereunder, which this Court may resolve on summary judgment.

**2.    California Law Governs The Noncompetition Agreements Irrespective Of The Ohio Choice Of Law Provision Therein**

Under well-settled California choice of law principles, California courts will refuse to enforce a choice of law clause in a contract in favor of another's jurisdiction's law when: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of state which has a materially greater interest than that of the chosen state in the determination of the particular issue and which, under the [Restatement],

would be the state of the applicable law in the absence of an effective choice of law by the parties." *See Nedlloyd Lines B.V. v. Sup. Ct. of San Mateo*, 3 Cal.4th 459, 465 (1992) (quoting Rest.2d Conflict of Laws § 187(2))*; Application Group,* 61 Cal.App.4th at 897. "If California has a materially greater interest than the chosen state, the choice of law shall **not** be enforced, for the obvious reason that in such circumstances we will decline to enforce a law contrary to this state's fundamental policy." *Nedlloyd, supra,* 3 Cal.4th at 466 (emphasis added). The state with the materially greater interest is the state which, "in the circumstances presented, will suffer greater impairment of its policies if the other state's law is applied." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,* 622 F.3d 996, 1003 (9th Cir.2010).

**a. Ohio Law is contrary to California's fundamental public policies**

Even assuming that Ohio law has a reasonable basis for governing this dispute, which Plaintiffs deny, Ohio noncompetition law is inarguably contrary to California's fundamental policy. For instance, Ohio courts apply a rule of "reasonableness" to noncompetition provisions. *Am. Bldg. Serv., Inc. v. Cohen,* 78 Ohio App.3d 29, 33 (Ohio Ct. App. 1992). Ohio courts may "blue-pencil" or modify non-compete provisions to render them reasonable. *See also Raimonde v. Van Vlerah*, 42 Ohio St. 2d 21, 23-26 (1975).

In stark contrast, such non-compete covenants are expressly unenforceable under California Business and Professions Code Section 16600. In California, "every contract by which anyone is restrained from engaging in lawful profession, trade, or business of any kind is to that extend void." Cal. Bus. & Prof. Code § 16600. Unlike Ohio, California courts will not "save" or otherwise modify non-compete provisions that restrain profession, trade or business. *Kolani v. Gluska,* 64 Cal.App.4th 402, 407-408 (1998) (Court refused to narrowly construe and instead invalidated a covenant not to compete). Whereas Sections 16600 and 17200 embody California's strong public policy of protecting the rights of its workers to pursue any lawful employment and enterprise of their choice, no corollary statutes exist in Ohio. *Hill Med. Corp. v. Wycoff*, 86 Cal.App.4th 895, 901 (2001); Appendix 3A, Restrictive Covenants, 1 Emp. L.

Deskbook Hum. Resources Profess., p.11 ("Ohio does not have state statute governing the general enforceability of covenants not to compete.").

California's policies concerning employee mobility are unquestionably fundamental. *See Brack v. Omni Loan Company Ltd.,* 164 Cal.App.4th 1312, 1324 (2008) (California's policy disfavoring non-competition agreements is "the kind of policy which is fundamental within the meaning of section 187 of the Restatement."). Thus, Ohio law conflicts with the fundamental public policies of California insofar as Ohio will enforce covenants to compete deemed reasonable, while California will not. *See Application Group, supra*, 61 Cal.App.4th at 899-900 (noting that the common law rule of reasonableness regarding the enforceability of a covenant not to compete is "diametrically opposed" to California's approach to enforceability of a covenant not to compete); *Davis v. Advanced Care Tech., Inc.* No. S-06-2449 RRB DAD, 2007 WL 2288298, *5 (E.D. Cal. Aug. 8 2007) (noting that the rule of reasonableness conflicts with California public policy).

**b. California has a materially greater interest in the outcome of this case than Ohio**

California also has a materially greater interest than Ohio in the application of its laws to the Parties' dispute. As discussed above, the application of Ohio law to this dispute will run afoul of California's most sanctified, protective public policies, which safeguard employee mobility and fair competition. This dispute involves businesses in California (both K2 and Molycorp), California employees, and the work Plaintiffs have performed in California. California has a strong interest in protecting the mobility of its employees whom entities doing business in California (such as Molycorp), wish to employ to provide services in California, "regardless of the person's state of residence or precise degree of involvement in California projects." *Application Group, supra,* 61 Cal.App.4th at 900-901. Here, as the undisputed facts demonstrate, Defendants, through the use of the illegal provisions in question, sought to restrict employees who worked for them in California from working for another California employer. California would therefore, undisputably, suffer greater impairment if its workers were stripped of these protections

by applying Ohio law to this dispute. Given California's efforts to codify and strictly enforce its public policies with respect to its employees and those entities doing business within this state, and the absence of the same protections under Ohio law, California's interests must prevail. *Application Group, supra,* 61 Cal.App.4th at 900-901.

### 3. The Noncompetition Agreements Violate California Law and Public Policy

Pursuant to Section 16600's mandate, California courts have consistently invalidated a wide range of non-competition agreements. *D'Sa v. Playhut,* 85 Cal.App.4th 927, 930-931 (2000) (agreement not to render services to any person or entity in connection with competing products for one year); *Metro Traffic Control v. Shadow Traffic Network,* 22 Cal.App.4th 853, 859-860 (1994) (covenant by traffic reporters not to provide traffic reporting services or related activities to competitors); *Kolani, supra*, 64 Cal.App.4th at 405-407 (prohibition on competing with employer for one year within a 40-mile radius or soliciting former employer's past, current, or potential customers).

The Noncompetition Agreements at issue here are no exception. Indeed, Defendants admit that if California law applies, the covenants not to compete are unenforceable. Court Docket # 18 (Joint Case Management Statement, p. 6, lines 7-8, "If the agreements are governed by California law, K2 agrees that the non-compete obligations are void.").

On its face, the noncompetition obligations in Paragraphs 2(c)(i) and (iii) of the Noncompetition Agreements purport to prevent Plaintiffs from working for or merely consulting with any competitor within 300 miles of any existing or contemplated K2 facility for an entire year. These provisions also purport to prevent Plaintiffs from not only soliciting, but also hiring K2 employees or independent contractors that solicit them for employment opportunities. Such overbroad no-hire provisions are void as a matter of California law. *VL Systems, Inc. v. Unisen, Inc.*, 152 Cal.App.4th 708, 718 (2007) (holding same).

-12-
MEMO. OF POINTS AND AUTH. ISO PLTFS' MOTION FOR PARTIAL SUMM. JUDG. ON THEIR FIRST, SECOND AND NINTH CAUSES OF ACTION
United States District Court, Northern, Case No. 12-cv-05526-WHO

Most significantly, *Application Group* is directly on point and compels summary judgment on Plaintiff's first cause of action. Notwithstanding a Maryland choice of law provision in the plaintiff's employment contract, the *Application Group* court declined to apply Maryland law to the employment dispute because to do so would have contravened California's strongest policies promoting employee mobility and fair competition. *Application Group, supra*, 61 Cal.App.4th at 905. Moreover, the court ruled that Section 16600 [and 17200] invalidated the noncompetition clause at issue and that the clause could not be enforced against a nonresident employee when a California employer seeks to hire them *for employment in California. Id.* at 905, 908. The court also held that nonresidents, who work for a California employer are "'employed in California' and thus 'engaged in a business or profession' in California, so as to enjoy the protections of 16600." *Id.* at 906. Accordingly, under *Application Group,* this Court must grant summary judgment in favor of Plaintiffs on their first cause of action.

**B. Plaintiffs Are Entitled To Summary Judgment On Their Second Claim For Declaratory Relief**

Plaintiffs are also entitled to summary judgment on their Second Cause of Action for declaratory relief. Plaintiffs have demonstrated that they and K2 are Parties to an agreement that is unenforceable under California law (*See* Section A above). Accordingly, Plaintiffs are also entitled to a declaration by this Court that the restrictive covenants in the Noncompetition Agreements are facially void and, as such, they cannot be used by K2 to interfere in any way with Plaintiffs' respective employment with Molycorp or any other employer.

**C. Plaintiffs Are Also Entitled To Summary Judgment On Their Ninth Claim For Violation of California Business and Professions Code Section 17200**

Plaintiffs are likewise entitled to summary judgment on their Ninth Claim for relief based upon K2's violation of California's unfair competition law. California's Unfair Competition Law ("UCL") codified in California Business and Professions Code Section 17200 *et. seq.* prohibits "any unlawful, unfair or fraudulent business act or practice…" Cal. Bus. & Prof. Code § 17200. It is well settled that "[a]n employer's use of an illegal noncompete agreement also

violates the UCL." *Dowell v. Biosense Webster, Inc.,* 179 Cal.App.4th 564, 575 (2009); *Application Group, supra,* 61 Cal.App.4th at 906-908 (holding section 17200 "borrows" violations of other laws, including Section 16600, and treats them as unlawful practices independently actionable under Section 17200); *Applied Materials*, *Inc. v. Advanced Micro-Fabrication Equip. (Shangai) Co.*, 630 F.Supp.2d 1084, 1091-92 (a forbidden policy or practice by an employer constitutes an unlawful business practice under Section 17200 *citing to Application Group*); *Arkley v. Aon Risk Services Cos., Inc.*, Case No. CV 12-1966 DSF (RZx), .8 (CD Cal. June 13, 2012) (granting summary judgment on UCL claim where employer used an illegal noncompete agreement.) Because Defendants required Plaintiffs to sign and abide by illegal agreements, and attempted to enforce those void agreements against them, Plaintiffs are entitled to summary judgment on their Ninth Cause of Action and all available remedies thereunder.

## V. CONCLUSION

The covenants not to compete in the Noncompetition Agreements K2 required Plaintiffs sign as a condition of their respective hire are contrary to California's fundamental public policies and violate California Business and Professions Code Section 16600. The restrictive covenants in the Noncompetition Agreements, in Paragraph 2, are therefore void and unenforceable. Further, K2's use and attempt to enforce these provisions against Plaintiffs constitute unfair and unlawful business practices under Section 17200. The Ohio choice of law provisions in the Noncompetition Agreements cannot save K2's facially void covenants not to compete, as Defendants will undoubtedly argue. Because California's interest in this litigation is materially greater than Ohio's, and because application of Ohio law would eviscerate California's fundamental public policies, California law must control.

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion for partial summary judgment as to their First, Second and Ninth claims for relief and specify in its order that its ruling is a final determination of the issues and not subject to future

proceedings in this action.

Dated: July 19, 2013

VALDEZ NOOR TODD & DOYLE LLP

*/s/ Troy A. Valdez*
TROY A. VALDEZ
Attorneys for Plaintiffs
IMTIAZ KHAN, *et. al.*


# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. STATEMENT OF PERTINENT FACTS ........ 2

A. The Parties And Their Noncompetition Agreements ........ 2

B. Khan Worked For K2 For Multiple Years in California Before Resigning to Work for Another Employer in California ........ 3

C. Shah Worked For K2 For Multiple Years Before Resigning To Work For Another Employer In California ........ 4

D. Seisinger Also Joins Molycorp In California After Working Several Years For K2 In California ........ 5

E. Despite Overwhelming Contrary Evidence, K2 Contends That Ohio Law Governs The Noncompetition Agreements ........ 6

F. K2 Vigorously Attempts To Enforce Its Noncompetition Agreements Against Plaintiffs In Two Separate Jurisdictions Outside of California Creating An Actual Controversy ........ 6

III. STANDARD OF REVIEW FOR PARTIAL SUMMARY JUDGMENT ........ 7

IV. ARGUMENT ........ 8

A. Plaintiffs Are Entitled To Summary Judgment On Their First Claim For Declaratory Relief ........ 8

1. This Matter is Justiciable And Ripe For Determination By This Court ........ 8

2. California Law Governs The Noncompetition Agreements Irrespective Of The Ohio Choice Of Law Provision Therein ........ 9

3. The Noncompetition Agreements Violate California Law and Public Policy ........ 12

B. Plaintiffs Are Entitled To Summary Judgment On Their Second Claim For Declaratory Relief ........ 13

C. Plaintiffs Are Also Entitled To Summary Judgment On Their Ninth Claim For Violation of California Business and Professions Code Section 17200 ........ 13

V. CONCLUSION ........ 14

**TABLE OF AUTHORITIES**

Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ........ 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ........ 7

*Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881, 893 fn. 6. (1998). 9, 11, 12, 13

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shangai) Co.*, 630 F.Supp.2d 1084 ........ 13

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F.Supp.2d 1084, 1091 (N.D. Cal. 2009) ........ 8

*Arkley v. Aon Risk Services Cos., Inc.*, Case No. CV 12-1966 DSF (RZx) (C.D. Cal June 13, 2012) ........ 8, 14

*Brack v. Omni Loan Company Ltd.,* 164 Cal.App.4th 1312, 1324 (2008) ........ 10

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,* 622 F.3d 996, 1003 (9th Cir.2010) .... 10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ........ 7

*D'Sa v. Playhut,* 85 Cal.App.4th 927, 930-931 (2000) ........ 12

*Delta Sav. Bank v. United States,* 265 F.3d 1017, 1021 (9th Cir. 2001) ........ 7

*Dowell v. Biosense Webster, Inc.,* 179 Cal.App.4th 564, 575 (2009) ........ 13

*Hill Med. Corp. v. Wycoff*, 86 Cal.App.4th 895, 901 (2001) ........ 10

*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941) ........ 8

*Kolani v. Gluska,* 64 Cal.App.4th 402, 407-408 (1998) ........ 10, 12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*. 475 U.S. 574, 586 (1986) ........ 7

*Metro Traffic Control v. Shadow Traffic Network,* 22 Cal.App.4th 853, 859-860 (1994) ........ 12

*Scott v. Snelling and Snelling, Inc.*, 732 F. Supp. 1034, 1045 (N.D. Cal. 1990) ........ 8

*See Nedlloyd Lines B.V. v. Sup. Ct. of San Mateo*, 3 Cal.4th 459, 465 (1992) ........ 9, 10

*Tehachapi-Cummings County Water Dist. v. Armstrong*, 49 Cal.App.3d 992, 998 (1975) ........ 9

*VL Systems, Inc. v. Unisen, Inc.*, 152 Cal.App.4th 708, 718 (2007) ........ 12

*Zajicek v. Koolvent Metal Awning Corp. of Am.*, 283 F.2d 127, 132 (9th Cir. 1960) ........ 8

Statutes

Cal. Bus. & Prof. Code § 16600 .......... 10

Cal. Bus. & Prof. Code § 17200 .......... 13

Cal. Code Civ. Proc. §1060 .......... 8

Fed. R. Civ. P. § 56 .......... 7, 8

Other Authorities

Rest.2d Conflict of Laws § 187(2) .......... 9

Out Of State

*Am. Bldg. Serv., Inc. v. Cohen,* 78 Ohio App.3d 29, 33 (Ohio Ct. App. 1992) .......... 10

*Raimonde v. Van Vlerah*, 42 Ohio St. 2d 21, 23-26 (1975) .......... 10

Other Federal

*Davis v. Advanced Care Tech., Inc.* No. S-06-2449 RRB DAD, 2007 WL 2288298, *5 (E.D. Cal. Aug. 8 2007) .......... 11

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) .......... 8