TROY A. VALDEZ, State Bar No. 191478
ERIN M. DOYLE, State Bar No. 233113
SHEILA A. KHAN-VARIBA, State Bar No. 219434
VALDEZ NOOR TODD & DOYLE LLP
116 New Montgomery Street, Suite 210
San Francisco, CA  94105
Telephone:   (415) 202-5950
Facsimile:    (415) 202-5951
Email: tvaldez@vsnlaw.com
Email: edoyle@vsnlaw.com
Email: skhan-variba@vsnlaw.com

Attorneys for Plaintiffs/Counter-Defendants
IMTIAZ KHAN, *et al.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMTIAZ KHAN, an individual, TIM MORRIS, an individual, RICK SEISINGER, an individual, and NEELESH SHAH, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>K2 PURE SOLUTIONS, L.P., a Delaware limited partnership, K2 PURE SOLUTIONS NOCAL, L.P., a Delaware limited partnership, K2 PURE SOLUTIONS PITTSBURG, L.P., a Delaware limited partnership, and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>K2 PURE SOLUTIONS, L.P., a Delaware limited partnership,<br><br>Counter-Claimant,<br><br>v.<br><br>IMTIAZ KHAN, an individual, TIM MORRIS, an individual, RICK SEISINGER, an individual, and NEELESH SHAH, an individual<br><br>Counter-Defendants. | Case No.:  3:12-cv-05526-WHO<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THEIR FIRST, SECOND AND NINTH CAUSES OF ACTION**<br><br>Date:            August 28, 2013<br>Time:           2:00 p.m.<br>Judge:          Hon. William H. Orrick<br>Courtroom:  2<br>Floor:           17<br>Trial Date:    June 9, 2014<br><br>Complaint Filed:  October 15, 2012<br>Case Removed:   October 26, 2012 |

## I. INTRODUCTION

Defendants K2 Pure Solutions, L.P., K2 Pure Solutions NoCal, L.P., and K2 Pure Solutions Pittsburg, L.P. (collectively "Defendants" or "K2") concede that the non-compete provisions at issue in this motion are void and unenforceable as a matter of California law. Opposition at 6-8. It is also undisputed that K2's use of the non-compete provisions constitutes unfair business practices in violation of California Business and Professions Code Section 17200. *Lomax v. Sellenthin,* 1999 WL 281120 at *3 (N.D. Cal. Apr. 26, 1999) (a plaintiff's failure to oppose an argument in a summary judgment motion is a concession that there are no genuine triable factual issues); *Dowell v. Biosense Webster, Inc.*, 179 Cal.App.4th 564, 575 (2009) (holding an employer's use of an illegal noncompete agreement violates California Business and Professions Code Section 17200). Based on these indisputable and undisputed conclusions, the Court should grant Plaintiffs' motion for partial summary judgment on their First, Second and Ninth Causes of action.

In an effort to avoid summary judgment and ever having the light of justice shined upon their unlawful business practices, K2 argues that because it currently is not seeking to enforce the void non-competition provisions, there is no actual controversy or recoverable damage. K2's arguments are of no relevance. Moreover, K2 conveniently ignores that it went to great lengths to enforce the Noncompetition Agreements against Plaintiffs in two separate jurisdictions outside of California, forcing Plaintiffs to incur significant expense and subjecting them to grave uncertainty over their livelihood.[1] According to K2's logic, Defendants should be able to punch someone in the nose, and when their victim seeks recourse, simply say "I'm sorry, I don't want to fight . . ." and miraculously be shielded from liability. If the Court lends its imprimatur to

---

[1] K2's use of and attempt to enforce the illegal non-competes put Plaintiffs in a position of having to choose whether to succumb to K2's threats and pressure and forego employment with MolyCorp or standup and fight K2 at great expense. This is not a choice Plaintiffs should have had to make under California law. *See Latona v. Aetna Healthcare Inc.,* 82 F.Supp.2d 1089, 1093 (C.D. Cal. 1999) (recognizing the difficult and unreasonable choices presented to an employee by an employer that uses illegal non-competes). However, to their detriment, Plaintiffs stood up to K2 to enforce California's strong public policy prohibiting non-competes.

K2's argument it will only further Defendants' unfair business practices while punishing the victims of those practices. This Court must see through this façade and, in the absence of any triable issues, reach the just result by granting Plaintiffs' motion.

## II.   ARGUMENT

### A.   Plaintiffs' Claims for Declaratory Relief And Unfair Business Practices Are Ripe For Summary Adjudication

K2 contends that because the non-compete provisions at issue have expired or will expire, and that because they are <u>no longer</u> seeking to enforce these provisions in California[2] there is no justiciable controversy before this Court and Plaintiffs' motion must fail. Opposition at 10-11. K2 further claims that because of these facts, there is no justiciable controversy before this Court. Notably, K2 cites to <u>no</u> legal authority that precludes this Court from granting declaratory relief with regard to the restrictive covenants at issue in this case. Nor can it, as K2's "circular" and self-serving argument has been flatly rejected by other courts. *See Latona v. Aetna U.S. Healthcare, Inc.*, 82 F.Supp.2d 1089, 1092-1093 (C.D. Cal. 1999) (rejecting Aetna's argument that "no violation of the law would occur unless and until the employer attempted to enforce the invalid provision.") (*citing Baker Pacific Corp. v. Suttles,* 220 Cal.App.3d 1148, 1154 (1990)). Moreover, Defendants' argument conveniently ignores their own actions and the history of this matter.[3] Defendants hope to simply sweep under the rug that K2, on its own accord, initiated

---

[2] K2's abandonment of its initial efforts to enforce the illegal non-compete provisions is not due to its charitable disposition, but rather because it was defeated in the non-California jurisdictions where Defendants first attempted to enforce the illegal contracts. The Nevada Court specifically held that the non-compete provisions were governed by California law and not enforceable. Supplemental Declaration of Troy A. Valdez In Support of Plaintiff's Reply Re Their Motion for Partial Summary Judgment On Their First, Second And Ninth Causes of Action ("Valdez Supp. Dec." ¶ 6, Ex. B (23:24-24:5). The Ohio Court, in considering preliminary jurisdictional issues, expressed "grave doubts" about what K2's dispute had to do with Ohio, and wondered why, if K2 were so worried about an expeditious ruling on the merits, it had not filed its action in a California court where the matter properly belonged. Valdez Supp. Dec. ¶ 7, Exh. C (11:13-20).

[3] The Ohio Court, at the hearing on K2's motion for a temporary restraining order and the hearing on Plaintiffs' motion to dismiss, specifically expressed "grave doubts" and "serious concerns" about what K2's claims against Plaintiffs Shah and Khan had to do with the state of Ohio on at least 5 occasions. *See* Valdez Supp. Dec. ¶ 7, Exh. C at 8:2-16, 9:24-10:3, 11:13-24; 17:19-24, 18:19-19:15; and 25:1-14. In fact, the Ohio Court specifically hinted to K2 that it

(continued...)

-2-

litigation against Plaintiffs regarding the enforceability of the non-competes at issue in this matter.

K2's argues that it does not currently dispute that the non-compete provisions are void and thus, that "there is no justiciable controversy." This argument is specious, at best. K2 has not always asserted that the non-compete provisions are unenforceable under California law. Indeed, in the Nevada action, K2 vigorously contended that Ohio law, and not California law, governs Plaintiffs' Agreements. Valdez Supp. Dec. ¶ 5, Ex. A. Having *twice* lost that battle in the Nevada and Ohio courts, K2 has now changed its stance mid-stream. Indeed, K2 now freely admits that the non-compete provisions are unlawful, but disclaims any damages resulting therefrom. Opposition at 7. K2's eleventh-hour admission does not render this motion futile, as it is necessary for this Court to evaluate the enforceability of the non-competition provisions in order to adjudicate whether their use also constitutes an unfair business practice in violation of Section 17200. *Application Group*, 61 Cal.App.4th at 894 (finding it was necessary for the trial court to determine as a preliminary matter whether the particular noncompetition clause was unenforceable before deciding whether to reach the other legal issues before it). Further, the facts that support Plaintiffs' declaratory relief claims also support their unfair business practice claim. Court Docket No. 42 (Plaintiffs' Second Amended Complaint, ¶¶ 1-39, 90-99).

Given K2's past efforts to enforce the agreements, and the fact that Defendants conditioned Plaintiffs' employment on the signing and acceptance of the Noncompetition Agreements, there is a justiciable controversy before this Court. *Latona*, F.Supp.2d at 1093 (holding that defendant employer's "argument that ripeness concerns require an employee to sign the [non-compete] Agreement, violate its provisions, and be sued before a court may analyze the provision's enforceability ignores the express purpose of section 16600: to prohibit contracts that restrain employees from engaging in their unlawful professions."). When K2 required Plaintiffs to

---

(...continued from previous page)

should consider voluntarily transferring this matter to California because of its grave concerns about jurisdiction. *Id.* at 27:8-25. The Nevada Court reached the merits and held that the non-compete provisions in question were governed by California law and unenforceable given the significant contacts with the state of California. Valdez Supp. Dec. ¶ 6, Exh. B at 23:24-24:5.

-3-
PLTFS' REPLY ISO THEIR MOTION FOR PARTIAL SUMM. JUDG. ON THEIR FIRST,
SECOND AND NINTH CAUSES OF ACTION
United States District Court, Northern, Case No. 3:12-cv-05526-WHO

enter into the unlawful Noncompetition Agreements and subsequently attempted to enforce them in Nevada and Ohio, it created a justiciable controversy.  While K2 would now like to disavow this controversy, no doubt, because it is in a jurisdiction that is readily familiar with California's strong public policy against the non-compete agreements Defendants - K2 cannot now unring the bell.

Finally, the irony in K2's position should not be lost on this Court.  K2 essentially argues that since Defendants now admit that their non-compete provisions are unlawful, there is no issue in dispute.  Despite this admission, K2 disclaims any economic injury resulting from its conduct.  Defendants' rationale defies both law and logic, and should not be endorsed by this Court.  *Application Group*, 61 Cal.App.4th at 908 (holding non-California resident businesses accountable for the wrongful business conduct affecting California employees and California employers).  Under K2's logic, any wrongdoer need only admit to its misdeeds to get off scot-free.  Rather than facilitate K2's conduct, this Court should, based on K2's admissions regarding the illegality of the restrictive covenants at issue, grant Plaintiffs' motion as to their declaratory relief cause of action.

**B.   K2's Argument That The Non-Competition Provisions Will Soon Expire And Will Result In No Harm to Plaintiffs Is Unavailing**

K2's argument that the non-compete provisions are not harmful because they will soon expire is equally unavailing.  The illegal non-competition provision in Rick Seisinger's ("Seisinger") agreement was operative as of the date of the filing of this motion (on July 19, 2013) and without this Court's intervention, the illegal non-compete provisions in Imtiaz Khan's ("Khan") and Neelesh Shah's ("Shah") agreements will remain in effect well *beyond* the August 28, 2013 hearing on this Motion, through September and October 2013 respectively.[4]  *See* Seisinger Dec. ¶ 2, Khan Dec. ¶ 2, Shah Dec. ¶ 2, Brodie Dec. ¶ 5.  Moreover, the fact that a non-

---

[4] This Court should not ignore that K2 has made every effort to delay this litigation from proceeding on the merits, having filed two separate motions to dismiss (Court Docket Nos. 34, 44).  This delay is intentional and a transparent effort to time out the illegal restrictive covenants at issue.  The irony of this delay should not be lost upon the Court given that when K2 was seeking a TRO to enforce the illegal provisions in Ohio and Nevada, it argued to those courts that this matter was quite urgent.  Valdez Supp. Dec. ¶¶ 6, 7, Exs. B & C.

compete provision had expired did not preclude the *Dowell v. Biosense Webster, Inc.* Court from granting summary judgment to the plaintiff employees. *See Dowell, supra,* 179 Cal.App.4th at 569 (finding plaintiffs' non-compete obligations expired in October 2006 and January 2007 respectively) and 570 (trial court entered summary judgment in favor of plaintiffs on February 27, 2007). Should this Court find that Seisinger's declaratory relief claim is moot or somehow timed out, Shah's and Khan's non-compete provisions are live and their corresponding declaratory relief claims remain justiciable. *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881, 906-908 (1998) (affirming declaratory judgment in favor of plaintiffs regarding employer's unenforceable noncompetition clause).

      K2 erroneously emphasizes that Plaintiffs' non-compete provisions will expire "in two months at the latest," implying that they are no longer harmful. Opposition at 11. And, yet, in far less time, K2 subjugated Plaintiffs by suing them not once, but ***twice*** in two different states, forcing them to incur exorbitant legal defense fees and costs as a direct result of K2's vigorous effort to enforce the same illegal provisions that it now attempt to disavow. Valdez Supp. Dec. ¶ 8. (Khan and Shah resigned in early September 2012 and October 2012 respectively, and were sued by K2 in Ohio by October 12, 2012. Khan Dec. ¶ 2, Shah Dec. ¶ 2, Valdez Dec. ¶ 3.) The Nevada action was dismissed *without prejudice* and can be reinitiated at any time, which K2 utterly fails to address. *See* Declaration of Brian C. Boyle, Ex. A. The Ohio action was transferred because the Ohio Court found that California was the most appropriate forum for this matter. Valdez Dec. ¶ 5, Ex. B. While Howard Brodie now declares that K2 will not seek to enforce its void non-compete provisions in California, Mr. Brodie's self-serving declaration does not nullify Plaintiffs' non-compete provisions or erase the fact that K2 has, to Plaintiffs' great detriment, sought to enforce these provisions against them. *See* Brodie Dec. ¶ 5. Additionally, it is undisputed that K2 has not waived or struck the offensive provisions from the Noncompetition Agreements. Valdez Supp. Dec. ¶ 9.

      Significantly, the cases K2 cites to in support of its proposition that Plaintiffs' declaratory claims are moot are inapposite. For instance, in *Morcote v. Oracle Corp.*, No. c-05-0386 JCS,

-5-

2005 WL 3157512 (N.D. Cal. Nov. 23, 2005), the former employee sought declaratory relief on a non-compete provision that expired *before* he ever filed the complaint. In stark contrast, the non-compete provisions in Khan's, Seisinger's and Shah's [and even Morris's] agreements were in effect when Plaintiffs filed this declaratory action and this motion for partial summary judgment, and they will remain in effect while pending the Court's hearing on this *motion*. Similarly unhelpful is the case *Gladwell Governmental Servs. v. Cnty. Of Marin,* No. C00403332 SBA, 2005 WL 2656964 (N.D. Cal. Oct. 17, 2005) *2, in which the court denied declaratory relief because the plaintiff had no legally cognizable interest in the claims at issue. Contrastingly, Plaintiffs' livelihood were threatened by K2's multiple efforts to enforce their illegal restrictive covenants and Plaintiffs have incurred enormous fees and costs exceeding $315,000 to safeguard those interests and halt K2's unfair business practices. Valdez Supp. Dec. ¶ 8. Accordingly, K2's argument should be rejected by this Court.

    **C.**    **Plaintiffs Have Indisputably Suffered Harm Entitling Them To Declaratory Relief**

K2's assertion that "there is no possibility that Plaintiffs can suffer *any* damage as a result of the non-compete provisions" is unpersuasive, belied by its own conduct to date, and dismissive of the public policy underlying California Business & Professions Code Section 16600. Opposition at 11. Notably, the *Application Group* Court expressly rejected a similar argument in the face of overwhelming evidence of the defendant employer's multiple threats of a lawsuit to enforce its non-compete provision and prior lawsuit against the plaintiff's new California employer. 61 Cal.App.4th 188, 893 fn. 6 (1998) (finding that defendant employer cannot challenge the justiciability of the parties' dispute concerning the validity of the non-compete provisions in plaintiff's employment agreement where defendant employer made multiple threats of litigation and actually filed a lawsuit); *see also Latona,* 82 F.Supp.2d 1093 (outlining the repugnant and unreasonable choice California employees should not be forced to consider when faced with an employer's illegal non-compete). K2, likewise, made multiple threats of litigation and then followed through by suing Plaintiffs in two different jurisdictions to enforce its illegal

non-compete provisions against them. Plaintiffs were then forced to initiate this lawsuit to seek equitable relief, among other remedies, as a result. *See infra* (this resulted in Plaintiffs incurring an economic loss –attorneys' fees – due to K2's unfair business practices). Accordingly, Defendants cannot now legitimately claim that Plaintiffs' agreements are not at issue and have caused no harm.

### D. Plaintiffs Have Indisputably Suffered An Economic Injury Due To K2's Unfair Business Practices Entitling Them To Summary Judgment On Their 17200 Claim

K2, likewise, cannot avoid summary judgment on Plaintiffs' unfair business practice claim. As noted above, it is undisputed that K2's use of the admittedly invalid and unlawful non-compete provisions contained in Plaintiffs' agreements constitutes an unfair business practice. *Lomax v. Sellenthin,* 1999 WL 281120 at *3 (N.D. Cal. Apr. 26, 1999) (Plaintiff's failure to oppose an argument in a summary judgment motion is a concession that there are no genuine triable factual issues); *Nev. Shell Dealers Ass'n v. Shell Oil Co.*, 725 F.Supp. 1104, 1009 (D. Nev.1989) (failure to oppose movant's argument in brief opposing motion for summary judgment implicitly concedes the argument); *see also Davis v. Johnson,* 2007 WL 1430089, at *7 (E.D. Cal. May 14, 2007) ("[Plaintiff's] failure to oppose summary judgment is a concession of as much."); *Dowell, supra,* 179 Cal.App.4th at 575 (an employer's use of an illegal noncompete agreement violates the UCL); *Application Group*, *supra,* 61 Cal.App.4th at 908 (holding use of a covenant not to compete in violation of Section 16600 also violates Section 17200).

K2 instead argues that: (1) Plaintiff has not proffered evidence to establish an actual injury; and (2) Plaintiffs' attorneys' fees cannot be recovered under California Business and Professions Code Section 17200. While it is true that attorneys' fees, as a matter of statute, are not available to the prevailing party in a 17200 unfair competition claim, this is irrelevant to whether K2's unfair business practices caused Plaintiffs to suffer an economic injury – namely the expenditure of attorneys' fees – that they otherwise would not have suffered. Plaintiffs have indisputably demonstrated that this is the case here.

With the passage of Proposition 64 California voters amended California's unfair

-7-

competition law to require that a plaintiff, in order to have standing under section 17200 of the Business & Professions Code, must claim economic injury resulting from the defendants' unfair business practices. *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 323 (2011).  As the *Kwikset* Court found there are innumerable ways in which economic injury from unfair competition may be shown to satisfy this requirement, including being "required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id., see also Hall v. Time, Inc.*, 158 Cal.App.4th 847, 854 (2008) (plaintiff required to expend money due to defendant's unfair competition has standing under 17200).[5]  As long as the economic expenditure is caused by the defendant's unfair competition, a plaintiff will be able to prove economic injury sufficient to demonstrate standing under 17200. *Kwikset, supra,* 51 Cal.4th at 326.  Here, it is indisputable that Plaintiffs have had to expend attorneys' fees due to K2's unfair and illegal use of non-compete provisions in its employment agreements.  Valdez Supp. Dec. ¶ 8.

      To be exact, Plaintiffs were required to expend attorneys' fees that they would not have otherwise been required to but for K2's attempt to enforce the illegal provisions in Nevada and Ohio.  Moreover, Plaintiffs were required to either sit idly by and let Defendants prevail in their efforts in the non-California jurisdictions or defend themselves by taking action here in California.  K2's illegal and unfair competition, thus, necessitated Plaintiffs' expenditures.  As demonstrated by the declaration of Troy A. Valdez, Esq. filed concurrently herewith, Plaintiffs have incurred substantial attorneys' fees and costs exceeding over $315,000 primarily because of Defendants' multiple efforts to enforce their noncompete provisions against Plaintiffs in multiple jurisdictions.  *Id*.  This is more than sufficient to establish that Plaintiffs have suffered an economic injury in fact due to K2's unfair and unlawful behavior.

---

[5] Plaintiffs attorneys' fees expended in this matter which provide them with the necessary and undisputed economic injury caused by K2's conduct are akin to fees recoverable because they are caused by the tortious conduct of another as opposed to fees allowed to the prevailing party. *See Howard v. American Nat'l Fire Ins. Co.,* 187 Cal.App.4th 498, 533 (2010) ("attorneys' fees are an economic loss . . ." where they are proximately caused by insurer's tortious conduct); and *Gray v. Miller & Assoc.*, 35 Cal.3d 498, 507-508 (1984) (where tort of another requires party to expend fees to protect his interests they are recoverable as economic damages).

Furthermore, while attorneys' fees may not ordinarily be available to the prevailing party under the UCL, this has no bearing on the fact that Plaintiffs have been forced to expend money due to K2's unfair competition.  Moreover, even if this argument were somehow relevant to this point, K2's contention is actually inaccurate with respect to facts of this case.  Here, Plaintiffs are nonetheless entitled to recover their fees and costs on other grounds, including the terms of the Noncompetition Agreements and the reciprocity provisions of California Civil Code Section 1717.  Specifically, Paragraph 3 in each of the Noncompetition Agreements expressly state:

> "In the event the Company prevails in establishing a breach by Employee of the obligations under paragraph 2 of this Agreement, Employee shall be a liable to the Company for its attorneys fees and costs incurred, in addition to any other remedies to which the Company may be entitled."

Khan Dec. ¶ 3, Ex. B ¶ 3, Shan Dec. ¶ 3, Ex. B. ¶ 3, Seisinger Dec. ¶ 3, Ex. B. ¶ 3; Cal. Civ. Code § 1717;  *Reudy v. Clear Channel Outdoors, Inc.*, 693 F.Supp.2d 1091, 1098 (N.D. Cal. 2010) (if one party is clearly entitled to attorneys' fees under the agreement then the other side is also entitled to such fees if it prevails.); *see also* Khan Dec. ¶ 3, Ex. B ¶ 2, Shan Dec. ¶ 3, Ex. B ¶ 2, Seisinger Dec. ¶ 3, Ex. B ¶ 2.  Section 1717 was enacted to prevent oppressive litigation tactics used by employers, including K2, by ensuring mutuality in contractual attorney fees' provisions.

Accordingly, because it is undisputed that K2's use of the noncompete provisions constitutes an unfair business practice, and the controversy arises out of the non-compete agreements that allows for the recovery of attorneys' fees, Plaintiffs' attorneys' fees are recoverable in this action.  However, more germane to the present motion, because K2's use of the non-compete provisions constitutes an unfair business practice and because that practice has indisputably caused Plaintiffs to incur costs that they would not have otherwise have been required to incur, Plaintiffs have proven that there is no disputed issue of fact or law with respect to their unfair competition claim.  Therefore, this Court should also grant summary judgment in favor of Plaintiffs on their Ninth Cause of action.

## III. CONCLUSION

For the foregoing reasons detailed above, Plaintiffs respectfully request that the Court grant their Motion for Partial Summary Judgment on their First, Second and Ninth Causes of Action and, further, specify in its order that its ruling is a final determination of the issues and not subject to future proceedings in this action.

Dated: August 9, 2013　　　　　　　　　　　VALDEZ NOOR TODD & DOYLE LLP

*/s/ Troy A. Valdez*
TROY A. VALDEZ

Attorneys for Plaintiffs/Counter-Defendants
IMTIAZ KHAN, *et al.*