UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMTIAZ KHAN, et al.,<br>Plaintiffs,<br>v.<br>K2 PURE SOLUTIONS, LP, et al.,<br>Defendants. | Case No. 12-cv-05526-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS THIRD, FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION OF SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 44 |

## INTRODUCTION

Plaintiffs Imtiaz Khan, Tim Morris, Rick Seisinger, and Neelesh Shah are suing defendants K2 Pure Solutions, L.P., K2 Pure Solutions NoCal, L.P., and K2 Pure Solutions Pittsburg, L.P. (collectively "K2"), seeking equitable relief related to non-compete agreements allegedly used by the defendants and claiming violations of the California Labor Code, violations of the California Business and Professions Code, unjust enrichment, and conversion. K2 moves to dismiss with prejudice from the plaintiffs' Second Amended Complaint ("SAC") the Third Cause of Action alleging failure to pay overtime wages, the Fifth Cause of Action alleging failure to furnish accurate itemized wage statements, the Sixth Cause of Action alleging failure to provide meal and rest periods, and the Seventh Cause of Action alleging conversion. Because the plaintiffs fail to plead sufficient facts showing that they are entitled to relief, the Motion to Dismiss the Third, Fifth, Sixth, and Seventh Causes of Action is GRANTED WITH LEAVE TO AMEND.

## FACTUAL BACKGROUND

For purposes of this Motion to Dismiss, the Court accepts as true the factual allegations in the SAC.

K2 is a manufacturer of solutions used for water purification and disinfection. SAC ¶ 16.

The plaintiffs are all former employees of K2. SAC ¶ 1. K2 hired Khan as a Plant Manager around December 2007, Morris as a Site General Manager around October 2008, Seisinger as a Production Manager around September 2010, and Shah as an Instrumentation and DCS Controls Engineer around June 2008. SAC ¶ 17. As a condition of their at-will employment, they were required to sign non-compete and confidentiality agreements with K2. SAC ¶ 18. The agreements state that for one year following the end of the plaintiffs' employment with K2, the plaintiffs will not be employed by "any person or entity which (A) competes with [K2] in the manufacture, processing or distribution of bleach and related chemical products to commercial customers and (B) is located or has operations within 300 miles of any existing plant operated by [K2] or any location [K2] has specifically identified for a future plant." SAC ¶ 33. Further, the agreements require the plaintiffs not to "[s]olicit, hire, recruit, or otherwise engage the services of any person who then currently is, or who at any time during [their] employment with [K2] was, an employee or independent contractor of [K2], or otherwise encourage or induce any such person to discontinue his or her relationship with [K2]." SAC ¶ 34.

K2's Employee Handbook has a vacation policy that applies only to employees protected by the California Labor Code (or "non-exempt" employees), which provides that "[n]on-exempt full time employees (those who generally work 40 or more hours per week) accrue 80 hours of paid vacation each full year of employment. Non-exempt employees accrue 3.08 hours of paid vacation per bi-weekly pay period." SAC ¶ 19. In letters to the plaintiff's counsel, K2 asserted that Khan, Morris, and Seisinger are subject to the policy and demanded that they reimburse K2 for payments that they allegedly received for vacation hours exceeding their limit. SAC ¶ 19. Thus, the plaintiffs argue, K2 concedes that Khan, Morris, and Seisinger are non-exempt employees.

K2 classified Morris and Seisinger as exempt employees "within four years prior to the filing of this lawsuit," but they "were not primarily engaged in exempt duties to qualify for exempt status." SAC ¶ 20. As a Site General Manager and later an Environmental Health & Safety Manager, Morris "generally responded to inquiries from outside consultants regarding the specifications of the plant facility in Pittsburg, California." SAC ¶ 21. As a Production Manager,

Seisinger was responsible for the production of bleach, chlorine, and caustic soda. SAC ¶ 22. However, they both were "unable to exercise independent judgment and discretion [or] regularly make independent choices or decisions of significance" without the direction or approval of K2's Chief Executive Officer, Howard Brodie, including making necessary job-related expenditures. SAC ¶¶ 21, 22. For the "majority" of Morris's time at K2, he supervised less than two employees at any given time. SAC ¶ 21. Thus, Morris and Seisinger "did not spend the majority of their time working for K2 engaged in exempt duties, rendering each of them non-exempt employees." SAC ¶ 23. But K2 did not pay them overtime wages for excess hours even though they worked more than eight hours a day and more than forty hours a week. SAC ¶ 24. K2 therefore owes Morris and Seisinger "all earned wages due, including overtime wages." SAC ¶ 20.

When the plaintiffs heard rumors that K2 was planning to lay them off, they resigned from K2—Morris in June 2012, Khan in September 2012, and Shah in October 2012. SAC ¶¶ 26-28. None were paid the wages owed to them, including "unused, accrued vacation." SAC ¶¶ 26-28. They were each then "independently recruited to work for Molycorp [at its Mountain Pass, California, facility] by Molycorp or its agents." SAC ¶¶ 25, 30. Molycorp is a rare earth mining, engineering, and processing company. SAC ¶ 30. The plaintiffs did not recruit or solicit any K2 employee, including one another, to leave K2 to join Molycorp. SAC ¶ 38.

"Shortly after" Khan, Morris, and Seisinger began working at Molycorp, K2 "began threatening to interfere" with their employment there. SAC ¶ 31. K2 sent them letters on September 20, 2012, claiming that they were in violation of the Noncompetition Agreements and demanding that they abide by its provisions. SAC ¶¶ 32, 35. On October 10, 2012, David Cynamon, K2's Executive Chairman, called Khan to urge him to leave Molycorp to return to K2, "implying that there may be consequences if Khan did not return." SAC ¶ 36.

The plaintiffs believe that K2 intends to prevent Molycorp from employing them or to seek damages or other relief from them for violating the non-compete agreements due to their employment at Molycorp and alleged recruitment of one another. SAC ¶ 37. The plaintiffs argue that the agreements are unenforceable under California law and that "K2's threats to enforce" them violate California law and public policy, and are an unlawful business practice and illegal

restraint of trade. SAC ¶ 38. They also argue that by requiring current and former employees to sign the agreements as a condition of employment, K2 is violating the California Labor Code and other statutes. SAC ¶ 39. Thus, they bring nine causes of action for (1) a declaration that the agreements are invalid and unenforceable under California Business and Professions Code Section 16600 and an injunction against K2's "interfering" with the plaintiffs' employment with Molycorp; (2) a declaration that the agreements are overbroad and unenforceable, and an injunction against K2's "interfering" with the plaintiffs' employment with Molycorp; (3) failure to pay overtime in violation of California Labor Code Sections 510, 558, and 1194 and Wage Order No. 4-2001; (4) failure to pay all wages upon resignation in violation of California Labor Code Section 202 and Wage Order No. 4-2001; (5) failure to furnish accurate itemized wage statements in violation of California Labor Code Section 226 and Wage Order No. 4-2001; (6) failure to provide meal periods and rest breaks in violation of California Labor Code Sections 226.7 and 512 and Wage Order No. 4-2001; (7) conversion; (8) unjust enrichment; and (9) violation of California Business and Professions Code Section 17200. The plaintiffs seek a declaration that California law governs the enforceability of the agreements and that the agreements are void; an injunction against enforcing the agreements and to stop K2's illegal practices; restitution; and various damages, penalties, and fees.

**PROCEDURAL BACKGROUND**

On October 15, 2012, the plaintiffs filed this case in the Superior Court of California, County of Contra Costa. On October 26, 2012, the defendants removed the case to this Court. Dkt. No. 1. On March 14, 2013, the plaintiffs filed an amended complaint. Dkt. No. 26. On April 12, 2013, the defendants filed a partial motion to dismiss claims alleging failure to pay overtime wages, failure to provide meal periods and rest breaks, and conversion, Dkt. No. 34, which the Honorable Phyllis Hamilton granted because the plaintiffs "rely on [] conclusory statements to support its claims," Dkt. No. 40.[1] On June 19, 2013, the plaintiffs filed their SAC. Dkt. No. 42. K2 moves to dismiss with prejudice the Third Cause of Action alleging failure to pay overtime

---

[1] Judge Hamilton dismissed with prejudice a fourth cause of action brought under California's Private Attorney General Act because it was barred by the one-year statute of limitation.

4

pay; the Fifth Cause of Action alleging failure to furnish accurate itemized wage statements; the Sixth Cause of Action alleging failure to provide meal and rest periods; and the Seventh Cause of Action alleging conversion.[2]

## LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), drawing all "reasonable inferences" from those facts in the nonmoving party's favor, *Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005). A complaint may be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement," *id.* (quotation marks and brackets omitted), and the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations," *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

## DISCUSSION

### I. MISCLASSIFICATION OF PLAINTIFFS

The plaintiffs fail to adequately plead that they were misclassified as exempt employees under the California Labor Code. The California Labor Code provides employees with certain rights, such as overtime wages and periodic breaks, unless an employee falls under three

---

[2] Plaintiffs filed a motion for summary judgment on the First, Second, and Ninth Causes of Action, which is pending before the Court.

5

exemptions: the professional exemption, the executive exemption, and the administrative exemption. CAL. CODE REGS. tit. 8, § 11040(1)-(3). These exemptions "must be construed in accordance with the ordinary principles of statutory interpretation." *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 825 (9th Cir. 2011). The Labor Code exempts employees who, among other things, "customarily and regularly direct[] the work of two or more other employees," "customarily and regularly exercise[] discretion and independent judgment," or are "primarily engaged in an occupation commonly recognized as a learned or artistic profession." CAL. CODE REGS. tit. 8, § 11040(1)-(3).

In support of their argument that they were misclassified as exempt employees, the plaintiffs provide almost no other facts besides their job titles and that "Seisinger was responsible for the production of bleach, chlorine and caustic soda" and "Morris generally responded to inquiries from outside consultants regarding the specifications of the plant facility." Reply 5-6. All other allegations—e.g., "Morris was unable to exercise independent judgment and discretion and regularly make independent choices or decisions of significance"—are simply "legal conclusions . . . cast in the form of factual allegations." *W. Min. Council*, 643 F.2d at 624. As K2 correctly argues, SAC's allegations "consist of legal conclusions copied directly from the California Code Regulations." Br. 5. The plaintiffs' allegations are not well-pleaded because they do not allege sufficient *facts* showing that the plaintiffs are indeed non-exempt employees under the Labor Code.[3]

The plaintiffs' argument that they are non-exempt employees because K2 allegedly demanded that they reimburse it for payments they received for unused vacation hours in excess of the limit contained in a policy for non-exempt employees does not help it. As *Ashcroft v. Iqbal* held, "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." 556 U.S. 662, 678 (2009) (quotation marks omitted). Here, although the plaintiffs allege that K2 limits the

---

[3] Because the plaintiffs fail to adequately plead that they are non-exempt employees, they also fail to show that they are entitled to overtime wages, meal and rest periods, and wage statements under the California Labor Code. However, the Court will address these causes of action for completeness and assume for that purpose that the plaintiffs are non-exempt employees.

6

vacation hours of non-exempt employees, they do not allege that K2 does not do the same for exempt employees. K2 posits that it caps vacation time for all its employees—exempt or not, and thus the fact that it may have sought reimbursement does not "concede" that the plaintiffs are non-exempt. Br. 5 n.3. While it is unnecessary to decide whether K2's claim is true or not, the point is that the plaintiffs' allegations are "merely consistent" with their theory, but do not meet the "plausible" standard. Without crossing the line from possibility to plausibility, the plaintiffs' factual allegations are inadequately pleaded to support its conclusions.

The plaintiffs argue that "[u]nder California law, employers bear the burden of proving that the classification of an employee as exempt from overtime is correct," and thus "[t]he burden lies with the employer to *plead* [] an exemption."[4] Opp'n 4 (emphasis added). While the plaintiffs are correct that employers bear the burden of proving an employee's exemption, they mistake the burden of pleading with the burden of proof. *See generally Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011) ("[u]nder California law, an employer bears the burden of demonstrating that an employee is exempt from the Labor Code's overtime requirements," but plaintiff "conflates the burden borne by the employer concerning the merits with the burden borne by the employee concerning class certification"). The cases that the plaintiffs cite do not support them. *Ramirez v. Yosemite Water Co.* states that "the employer bears the burden of *proving* the employee's exemption," 20 Cal. 4th 785, 794-95 (1999) (emphasis added), and *Corning Glass Works v. Brennan,* a federal Fair Labor Standards Act case, held that "the employer has the burden of *proof*" of exemptions, 417 U.S. 188, 196-97 (1974) (emphasis added). Because this is a motion to dismiss, Federal Rule of Civil Procedure 8 governs whether a complaint is well-pleaded. Plaintiffs must adequately allege in their complaint that they are non-exempt employees under the California Labor Code. This is not an easy task for plaintiffs since their jobs are typically considered exempt. At least at present, plaintiffs have not adequately pleaded specific facts to show that they are non-exempt employees.

---

[4] In support of their argument, the plaintiffs then cite three cases dealing with the federal Fair Labor Standards Act, not state law.

7

## II. THIRD CAUSE OF ACTION: FAILURE TO PAY OVERTIME WAGES

The plaintiffs fail to state a claim under California Labor Code Sections 510, 558, and 1194 and Wage Order No. 4-2001. These statutes mandate that employers pay 50 percent higher wages when an employee works more than eight hours a day or 40 hours a week, and provide a cause of action if employers fail to do so. The SAC states that "[a]lthough Morris and Seisinger regularly worked more than eight (8) hours in a workday and/or more than forty (40) hours in a work week, K2 failed to pay Morris and Seisinger overtime wages for all hours worked in excess of eight (8) in a workday and/or forty (40) in a work week as required." SAC ¶ 24; *see also* SAC ¶ 58. K2 allegedly did so "knowingly and willfully." SAC ¶ 59.

The plaintiffs provide no facts to support these bare assertions. "Courts have repeatedly rejected similar allegations that simply recite the statutory language setting forth the elements of the claim, and then slavishly repeat the statutory language as to the purported factual allegations," as the plaintiffs do here. *Ovieda v. Sodexo Ops., LLC*, CV 12-1750-GHK, 2012 WL 1627237, at *3 (C.D. Cal. May 7, 2012) (citing cases in which courts dismissed claims based on nearly identical allegations). Rule 8's pleading requirements do not require "detailed factual allegations," but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, the SAC is devoid of any facts at all to support the plaintiffs' claims. The plaintiffs do not plead what work they did but were not paid for, or give any sense about when or how this happened, let alone that the K2 did so "knowingly and willfully." The plaintiffs do not adequately state a claim for failure to pay overtime wages.

## III. FIFTH CAUSE OF ACTION: FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS

The plaintiffs fail to state a claim under Section 226 of the California Labor Code. Under that statute, an employer must provide employees, semimonthly or with each wage payment, a statement listing information such as gross wages, hours worked, deductions, net wages, and the pay period. CAL. LAB. CODE § 226 (West 2013). To recover under Section 226, "an employee must suffer injury as a result of a knowing and intentional failure by an employer to comply with

the statute." *Price v. Starbucks Corp.*, 122 Cal. Rptr. 3d 174, 179 (Ct. App. 2011). Alleging a mere omission of one of the required pieces of information is insufficient to state a claim; rather, the plaintiff must plead "*an injury* arising from the missing information." *See id.* "[A] very modest showing will suffice." *Jaimez v. DAIOHS USA, Inc.*, 105 Cal. Rptr. 3d 443, 460 (Ct. App. 2010).

Here, the SAC states, "K2 willfully failed to furnish to nonexempt employees Morris and Seisinger, upon each pay period, itemized wage statements accurately showing, at minimum, the total hours worked, gross wages, net wages, applicable hourly wages and the corresponding hours worked at each applicable hourly rate." SAC ¶ 69. The only injury the SAC alleges is that "Morris and Seisinger . . . were damaged by these failures because . . . these failures led them to believe that they were not entitled to overtime pay and were prevented from determining the amounts of overtime compensation actually due to them." SAC ¶ 70. But the SAC is so devoid of facts that it even remains unclear whether K2 merely provided inaccurate statements or whether K2 provided no statements at all. Furthermore, the plaintiffs' argument about injury is not plausible because they do not explain how "these failures" "led them to believe they were not entitled to overtime pay" or "prevented [them] from determining the amounts of overtime compensation actually due to them." Finally, the plaintiffs do not say how K2's alleged actions were "knowing and intentional." The SAC does not meet the "rather low" bar for pleading facts showing a violation of Section 226. *Jaimez*, 105 Cal. Rptr. 3d at 460 (citing *Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042, 1050-51 (C.D. Cal. 2006)).

## IV. SIXTH CAUSE OF ACTION: FAILURE TO PROVIDE MEAL AND REST PERIODS

The plaintiffs fail to state a claim under California Labor Code Sections 226.7 and 512 and Wage Order No. 4-2001. California Labor Code Sections 226.7 and 512 and Wage Order No. 4-2001 "require an employer to provide an employee with a thirty-minute meal period if the employee works at least five hours and a ten-minute break for every four hours the employee works." *Angeles v. U.S. Airways*, No. 12-cv-05860-CRB, 2013 WL 622032, at *8 (N.D. Cal. Feb. 19, 2013). Here, the plaintiffs provide no allegations to support their claim except for the

assertion that "Defendants routinely failed to provide nonexempt employees Morris and Seisinger with rest and meal periods during their work shifts." SAC ¶ 74. A bare statement without pleading any additional facts to support it is insufficient—Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009) (quotation marks omitted). Here, the plaintiffs do nothing more than baldly assert that K2 did not follow the law and provide no facts explaining any circumstance in which it happened. The plaintiffs do not adequately state a claim for failure to provide meal and rest periods.

## V. SEVENTH CAUSE OF ACTION: CONVERSION

The plaintiffs fail to state a claim for conversion. "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Farmers Ins. Exch. v. Zerin*, 61 Cal. Rptr. 2d 707, 709 (Ct. App. 1997) (citation omitted). "Money can be the subject of an action for conversion if a specific sum capable of identification is involved." *Id.* Because the causes of action on which plaintiffs depend for their conversion claim are dismissed in this Order, the conversion claim also fails. If plaintiffs choose to replead this cause of action, they should specifically allege the basis for their claim and how a specific sum that was allegedly converted could be ascertained.

## CONCLUSION

This Order dismisses plaintiffs' third complaint in this case. Plaintiffs provide scant and insufficient facts to support the causes of action at issue. However, because the Court finds that allowing amendment may not be futile, the Motion to Dismiss the Third, Fifth, Sixth, and Seventh Causes of Action of the SAC is GRANTED WITH LEAVE TO AMEND. The plaintiffs shall file any amended complaint within 20 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: September 3, 2013



WILLIAM H. ORRICK
United States District Judge

10