UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMTIAZ KHAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>K2 PURE SOLUTIONS, LP, et al.,<br><br>　　　　Defendants. | Case No. 12-cv-05526-WHO<br><br>**ORDER DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT AND ORDERING SUPPLEMENTAL BRIEFING ON UNFAIR COMPETITION LAW CLAIM**<br><br>Re: Dkt. No. 45 |

## INTRODUCTION

Imtiaz Khan, Tim Morris, Rick Seisinger, and Neelesh Shah are suing defendants K2 Pure Solutions, L.P., K2 Pure Solutions NoCal, L.P., and K2 Pure Solutions Pittsburg, L.P. (collectively, "K2"), seeking equitable relief related to non-compete agreements allegedly used by K2 and claiming violations of the California Labor Code, violations of the California Business and Professions Code, unjust enrichment, and conversion. Plaintiffs Shah, Khan, and Seisinger (collectively, the "plaintiffs") move for summary judgment on the First Cause of Action of their Second Amended Complaint ("SAC") for a judicial determination that the non-compete agreements are invalid under California law; the Second Cause of Action for a declaration that the non-compete agreements are unenforceable and do not affect the plaintiffs' employment with their current employer, Molycorp; and the Ninth Cause of Action for violation of California's Unfair Competition Law.

Based upon the parties' briefs and argument by counsel, and for the reasons below, the Motion for Partial Summary Judgment on the First and Second Causes of Action is DENIED.[1] In

---

[1] Although K2 has not made a cross-motion for summary judgment, it requests in its opposition

addition, the Court defers ruling on the Ninth Cause of Action and ORDERS supplemental briefing on the issue of whether attorney's fees accrued in past actions constitute sufficient harm to confer standing under the Unfair Competition Law.

**FACTS**

The following facts are undisputed: The plaintiffs are all former employees of K2. Khan Decl. ¶ 2; Shah Decl. ¶ 2; Seisinger Decl. ¶ 2. As a condition of their employment, the plaintiffs each signed a written agreement with K2 Pure Solutions, L.P., entitled "Noncompetition And Confidentiality Agreement" (the "non-compete agreements" or "agreements"). Khan Decl. ¶ 3, Ex. B; Seisinger Decl. ¶ 3, Ex. B; Shah Decl. ¶ 3, Ex. B. The agreements state that the plaintiffs, for a period of one year after their employment ends, cannot

> "[o]wn, manage, control, be employed by, consult with, finance or otherwise provide services, information or assistance to any person or entity which (A) competes with [K2] in the manufacture, processing or distribution of bleach and related chemical products to commercial customers and (B) is located within 300 miles away of any existing plant operated by [K2] or any location [K2] has specifically identified for a future plant."

Khan Decl. Ex. B ¶ 2(c)(i); Seisinger Decl. Ex. B ¶ 2(c)(i); Shah Decl. Ex. B ¶ 2(c)(i). In addition, the agreements state that the plaintiffs, for a period of one year after their employment ends, cannot

> "[s]olicit, hire, recruit, or otherwise engage the services of any person who then currently is, or who at any time during Employee's employment with [K2] was, an employee or independent contractor of [K2], or otherwise encourage or induce any such person to discontinue his or her relationship with [K2]."

Khan Decl. Ex. B ¶ 2(c)(iii); Seisinger Decl. Ex. B ¶ 2(c)(iii); Shah Decl. Ex. B ¶ 2(c)(iii).

Khan began working at K2 around December 2007, and voluntarily resigned and joined Molycorp in September 2012, where he still works. Khan Decl. ¶¶ 2, 7. Shah began working at

---

brief that the Court deny the plaintiffs' Motion for Partial Summary Judgment in its entirety and grant K2 summary judgment on the First, Second, and Ninth Causes of Action. Opp'n 4. The Court declines to grant summary judgment for K2.

1  K2 around June 2008, and voluntarily resigned from K2 and joined Molycorp in October 2012,
2  where he still works. Shah Decl. ¶¶ 2, 8, 10. Seisinger began working at K2 around September
3  2010, and voluntarily resigned in July 2012 and joined Molycorp, where he still works. Seisinger
4  Decl. ¶¶ 2, 6.

On October 12, 2012, K2 filed suit against Morris, Seisinger, and Molycorp in the United States District Court, District of Nevada, in a case entitled *K2 Pure Solutions, LP v. Molycorp, Inc., Molycorp Minerals, LLC, Timothy M. Morris, and Richard Seisinger*, Case No. A-12-670067-B (the "Nevada action"). Valdez Br. Decl. ¶ 3. On the same day, K2 filed suit against Khan and Shah in the United States District Court, Northern District of Ohio, in a case entitled *K2 Pure Solutions, L[]P v. Imtiaz Khan and Neelesh Shah*, Case No. 5:12-CV-02558-JRA (the "Ohio action"). Valdez Br. Decl. ¶ 3. In both cases, K2 sought to enforce its non-competition and non-solicitation agreements with the plaintiffs based on their employment with Molycorp, and argued that the plaintiffs' employment with Molycorp violated the agreements. Valdez Br. Decl. ¶ 3. The court in the Ohio action found that the Northern District of California was "the more appropriate venue to hear and decide" that case and transferred it to this Court. Valdez Br. Decl. Ex. B at 4. However, after K2 reached a settlement with Molycorp, K2 voluntarily dismissed the entire Ohio action. Boyle Decl. ¶ 4. On January 7, 2013, K2, Morris, and Seisinger stipulated to dismissing the Nevada action without prejudice. Boyle Decl. Ex A.

The one-year non-compete provisions in Morris's and Seisinger's agreements have already expired. Brodie Decl. ¶ 5. Khan's non-compete provision will expire on September 7, 2013, and Shah's non-compete provision will expire on October 3, 2013. Brodie Decl. ¶ 5. Howard Brodie, K2's Chief Executive Officer, declares that "K2 will not pursue any claims to enforce the non-compete provisions or to recover any damages from Plaintiffs related to the non-compete provisions, whether in this lawsuit or in any other action in the future." Brodie Decl. ¶ 5.

Although the non-compete agreements contain Ohio choice-of-law clauses, none of the parties dispute that California law governs the agreements, and none of the parties dispute that they are void under California law. Opp'n 6 ("the parties do not dispute that the non-compete provisions in the Confidentiality Agreements are void under California law and unenforceable if

3

pursued in this case").

## PROCEDURAL BACKGROUND

On October 15, 2012, the plaintiffs filed this case in the Superior Court of California, County of Contra Costa. On October 26, 2012, the defendants removed the case to this Court. Dkt. No. 1. On March 14, 2013, the plaintiffs filed an amended complaint. Dkt. No. 26. On April 12, 2013, the defendants filed a partial motion to dismiss claims alleging failure to pay overtime wages, failure to provide meal periods and rest breaks, and conversion, Dkt. No. 34, which the Honorable Phyllis Hamilton granted, Dkt. No. 40. On June 19, 2013, the plaintiffs filed their SAC. Dkt. No. 42. The plaintiffs now move for summary judgment on the First, Second, and Ninth Causes of Action.[2] Dkt. No. 45.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the court "that there is an absence of evidence to support the non[-]moving party's case." *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate specific facts showing a genuine issue for trial." *Id.* at 324 (quotation marks omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light

---

[2] K2 filed a motion to dismiss the Third, Fifth, Sixth, and Seventh Causes of Action, which is pending before the Court. Dkt. No. 44.

4

1  most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

2  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

3  inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for

4  summary judgment." *Id.* However, conclusory or speculative testimony in affidavits is

5  insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g*

6  *Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**I.    FIRST AND SECOND CAUSES OF ACTION:  DECLARATORY JUDGMENT**

The gravamen of the first two causes of action for declaratory relief is that the non-compete agreements are illegal under California law. About that there is no dispute—they are. Neither party currently disagrees. For that reason, however, plaintiffs are not entitled to summary judgment on these causes of action—the issue is not justiciable because there is no dispute that the agreements are void under California Business and Professions Code Section 16600.

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration" when there is an "actual controversy." 28 U.S.C. § 2201(a). This requirement stems from the "case or controversy" requirement in Article III of the Constitution. U.S. CONST. art. III. To meet this requirement, the party seeking relief must show that he has standing and that the alleged controversy is ripe for judicial determination. *Burlington N. R.R. Co. v. Crow Tribal Council*, 940 F.2d 1239, 1243 (9th Cir. 1991). To show standing, the party must establish a "likely," rather than "speculative," "threatened or actual injury," and to show ripeness, the party must establish that the claim does not "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all," though "the ripeness inquiry merges almost completely with standing." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656, 662 (9th Cir. 2002) (citations and quotation marks omitted). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). "The burden is on the party seeking declaratory relief to establish the existence of an actual controversy." *Active Sports Lifestyle USA, LLC v. Old Navy, LLC*, SACV 12-572 JVS, 2012 WL 2951924, at *2 n.3 (C.D. Cal.

July 16, 2012).

When this lawsuit was filed, there was an actual controversy over the non-compete agreements. K2 had attempted to enforce them in two federal district courts in Nevada and Ohio. But an actual case or controversy must exist at *every* stage of the proceedings, not merely when the complaint was filed, for a cause of action seeking declaratory relief to be justiciable. *Preiser*, 422 U.S. at 401. As the Ninth Circuit explained, a court may not grant relief "where there had been but no longer is any actual controversy between the parties." *Perry v. City & Cnty. of San Francisco*, No. 10-16696, 2011 WL 2419868, at *61 (9th Cir. April 27, 2011) (brackets and quotation marks omitted); *see also* WILLIAM W. SCHWARZER ET AL., CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL 10-10, 10-11 (2013) (citations omitted).

Here, K2 stated in a Case Management Conference Statement filed in February that the non-compete agreements were void under California law. Dkt. No. 18 at 6. K2's CEO, Brodie, has declared under penalty of perjury that "K2 will not pursue any claims to enforce the non-compete provisions or to recover any damages from Plaintiffs related to the non-compete provisions, whether in this lawsuit or in any other action in the future." Brodie Decl. ¶ 5. The non-compete agreements with Morris and Seisinger have already expired. And while the agreements with Khan and Shah do not expire until September 7, 2013, and October 3, 2013, respectively, given K2's unequivocal admission that the agreements are illegal under California law, the likelihood that K2 would reverse course, risk perjury, and attempt to enforce the agreements in the next month is far too speculative and remote to sustain standing under Article III of the Constitution and the Declaratory Judgment Act. As the Supreme Court has held, "A justiciable controversy is [] distinguished from a difference or dispute of a hypothetical or abstract character." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937).

This Order is consistent with the decisions of two federal courts that declined to enter declaratory judgment where a defendant did not seek to enforce a non-compete agreement. In *Smith v. Bioworks*, the court held that where the defendant "declared [under penalty of perjury] that he never attempted to enforce any term of the non-compete clause against plaintiff [and did not] express to plaintiff that he believed any violations had occurred as a result of his post-

6

1  termination activities," then there is no justiciable controversy. *Smith v. Bioworks*, No. Civ. S-05-
2  1650 FCD, 2007 WL 273948, at *5 (E.D. Cal. Jan. 29, 2007). And in *Mintz v. Mark Bartelstein &
3  Assocs.*, 906 F. Supp. 2d 1017 (C.D. Cal. 2012), even when the defendant would not stipulate to
4  an order agreeing to refrain from enforcing a non-compete agreement, the court held that "there is
5  no evidence that Defendants have attempted, in this or any other litigation, to enforce the non-
6  compete clause. The Court therefore concludes that Plaintiff has not met its burden of
7  demonstrating an actual controversy with sufficient immediacy and reality to warrant the issuance
8  of a declaratory judgment." *Id*. at 1028 (quotation marks omitted).

9        To be sure, the two federal cases are somewhat different from this one because the
10 defendants there never previously sued the plaintiffs based on their non-compete agreements
11 whereas K2 has. But that does not change their teaching that, where the defendant unequivocally
12 does not seek to enforce a non-compete agreement, a court should not—or cannot—issue a
13 declaratory judgment. Where "plaintiffs seek declaratory [] relief only, there is a further
14 requirement that they show a *very* significant possibility of *future* harm; it is insufficient for them
15 to demonstrate only a past injury." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121,
16 1126 (9th Cir. 1996) (emphases added). Simply put, the Court may not "consider a claim to be
17 ripe for judicial resolution if it rests upon contingent *future* events that may not occur as
18 anticipated, or indeed may not occur at all." *Scott*, 306 F.3d at 662 (quotation marks omitted and
19 emphasis added). Here, the plaintiffs can only show past injury but have not established sufficient
20 facts to show "a *very* significant possibility of future harm." Thus, they lack standing to bring
21 their claims.

22       The plaintiffs counter that two state court cases demonstrate that declaratory relief claims
23 are justiciable even after a non-compete agreement has expired. Leaving aside the fact that the
24 courts in those cases were not subject to the requirements of the Declaratory Judgment Act and
25 Article III's "case or controversy" requirement, neither is persuasive authority for plaintiffs'
26 argument. *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal App. 4th 881 (Ct. App. 1998), is
27 actually consistent with this Order's holding—it reversed a declaratory relief judgment for the
28 individual plaintiff because it was moot as a result of the expiration of the non-compete

7

agreement. *Id.* at 893 n.6. The reason the portion of the declaratory relief judgment on the non-compete agreement survived against the entity defendants was that it was the predicate for other, justiciable relief sought by plaintiffs in the same declaratory relief claim; otherwise, "declaratory relief would be inappropriate in such a situation." *Id.* at 893. *Dowell v. Biosense Webster, Inc.*, 102 Cal. Rptr. 3d 1 (Ct. App. 2009), is also no help to plaintiffs since the defendant in that case contested the invalidity of the agreements throughout the litigation. Further, the issue of justiciability did not appear to be before the court, so *Dowell* is not instructive here.

The plaintiffs argue that because the Nevada action was dismissed without prejudice, K2 can reinstitute the suit at any time. Br. 9. However, that the agreements still remain in effect only means that the case is not "moot," not that it is justiciable. As the Supreme Court has said, "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). Similarly, the Ninth Circuit has found that where a defendant ceases its conduct only "in response to a court order, the possibility of future injury is not speculative enough to establish mootness. Nevertheless, it is too weak to support standing." *Scott*, 306 F.3d at 656.

Accordingly, because the plaintiffs lack standing to bring their causes of action for declaratory relief, their Motion for Partial Summary Judgment on the First and Second Causes of Action is DENIED.

## II. NINTH CAUSE OF ACTION: UNFAIR COMPETITION LAW

The Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted). The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable."

8

1  *Daugherty v. Am. Honda Motor Co., Inc.*, 51 Cal. Rptr. 3d 118, 128 (Ct. App. 2006). The "unfair"
2  prong requires proving either (1) a practice that "offends an established public policy or is
3  immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and that is
4  "tethered to specific constitutional, statutory or regulatory provisions," *Bardin v. Daimlerchrysler*
5  *Corp.*, 39 Cal. Rptr. 3d 634, 642, 645 (Ct. App. 2006) (quotations omitted); or (2) that "the utility
6  of the defendant's conduct [is outweighed by] the gravity of the harm to the alleged victim,"
7  *Schnall v. Hertz Corp.*, 93 Cal. Rptr. 2d 439, 456 (Ct. App. 2000). The "fraudulent" prong of the
8  UCL "require[s] only a showing that members of the public are likely to be deceived."
9  *Daugherty*, 51 Cal. Rptr. 3d at 128.

10  "An employer's use of an illegal noncompete agreement [] violates the UCL." *Dowell v.*
11  *Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575 (2009). But "[t]o have standing to assert a
12  claim under the UCL, a plaintiff must have suffered injury in fact and have lost money or property
13  as a result of such unfair competition." *Aron v. U-Haul Co. of Cal.*, 49 Cal. Rptr. 3d 555, 559
14  (2006).

15  K2 argues that "Plaintiffs fail to establish that they have suffered actual injuries or lost
16  money or property as a result of the non-compete provisions." Opp'n 13. Indeed, the only injury
17  the plaintiffs allege is that they "have incurred and continue to incur a financial burden in pursuing
18  *this* action." SAC ¶ 97 (emphasis added). Even if the plaintiffs presented facts to support that
19  contention—which they do not—attorney's fees incurred merely by bringing this case are
20  insufficient to establish the necessary injury necessary under the UCL. *Cordon v. Wachovia*
21  *Mortgage, a Div. of Wells Fargo Bank, N.A.*, 776 F. Supp. 2d 1029, 1039 (N.D. Cal. 2011).

22  Only in their reply brief and its supporting declaration do the plaintiffs raise for the first
23  time the theory that the attorney's fees they incurred in the Ohio and Nevada actions constitute an
24  injury under the UCL.[3] Reply 8; Valdez Reply Decl. ¶ 8. "It is improper for the moving party to

---

[3] While there are cases holding that attorney's fees are insufficient to establish injury to *bring* a UCL action, *see, e.g.*, *Cordon v. Wachovia Mortgage, a Div. of Wells Fargo Bank, N.A.*, 776 F. Supp. 2d 1029, 1039 (N.D. Cal. 2011); *see also Serna v. Bank of Am., N.A.*, No. CV 11-10598 CAS, 2012 WL 2030705, at *5 (C.D. Cal. June 4, 2012); *Thompson v. Residential Credit Solutions, Inc.*, No. CIV 2:11-2261 WBS, 2012 WL 260357, *5 (E.D. Cal. Jan. 26, 2012), the Court is currently unaware of any authority stating that attorney's fees used in *defending* a

United States District Court
Northern District of California

'shift gears' and introduce new facts or different legal arguments in the reply brief than presented in the moving papers," as the plaintiffs do here. *Clark v. Cnty. of Tulare*, 755 F. Supp. 2d 1075, 1090 (E.D. Cal. 2010); *see also Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[w]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond"). K2 has not had an opportunity to dispute this new theory or the facts that allegedly support it. Without affording K2 a chance to be heard, the Court will not consider "a new and different issue which was not briefed in their moving papers nor raised in the opposition." *Id.*

It will be speedier, less expensive, and as just to allow the parties to brief this issue than to allow a second round of motions for summary judgment, as plaintiffs requested at oral argument, or to require the parties to go to trial on this issue. Accordingly, the Court ORDERS supplemental briefing on the issue of whether attorney's fees accrued in defending the Nevada and Ohio actions constitute an injury in fact sufficient to confer standing on the plaintiffs under the UCL.

## CONCLUSION

Based on the undisputed evidence before the Court, because the plaintiffs are not entitled to judgment as a matter of law on the First and Second Causes of Action of the SAC, their Motion for Partial Summary Judgment is DENIED. However, because the plaintiffs raised the issue of whether attorney's fees accrued in past actions can constitute harm sufficient to confer standing under the UCL, but K2 did not have an opportunity to respond, the Court ORDERS supplemental briefing on that question. The parties shall each file a memorandum of no more than five pages

---

previous case is insufficient to establish injury in a UCL action. Whereas courts are concerned that allowing attorney's fees to establish injury under the UCL would mean that "a private plaintiff bringing a UCL claim automatically would have standing merely by filing suit," *Cordon*, 776 F. Supp. 2d at 1039, that concern is absent in a situation where a party's unfair or unlawful actions result in the alleged victim's having to defend a suit. As the statute says, a claim may be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." CAL. BUS. & PROF. CODE § 17204. The statute and the cases interpreting it do not distinguish between different kinds of lost money or property. In interpreting the statute, the Supreme Court of California stated, "There are innumerable ways in which economic injury from unfair competition may be shown. . . . [The law does not] purport to define or limit the concept of 'lost money or property,' nor can or need we supply an exhaustive list of the ways in which unfair competition may cause economic harm." *Kwikset Corp. v. Super. Ct. of Orange Cnty.*, 51 Cal. 4th 310, 323 (2011). As discussed below, the Court will allow the parties to file supplemental briefing to address this issue.

1  (double-spaced in accordance with the rules of the Court) on this issue by September 17, 2013,

2  and may reply to each other's briefs, if desired, by September 24, 2013, with a memorandum of no

3  more than three pages.

4  **IT IS SO ORDERED.**

5  Dated: September 3, 2013



_____
WILLIAM H. ORRICK
United States District Judge