UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IMTIAZ KHAN, et al.,

    Plaintiffs,

v.

K2 PURE SOLUTIONS, LP, et al.,

    Defendants.

Case No. 12-cv-05526-WHO

**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT ON NINTH CAUSE OF ACTION**

Re: Dkt. No. 45

## INTRODUCTION

On September 3, 2013, the Court denied the plaintiffs' Partial Motion for Summary Judgment on their First and Second Causes of Action and ordered supplemental briefing on the issue of whether attorney's fees accrued in defending the Nevada and Ohio actions constitute an injury in fact sufficient to confer standing on the plaintiffs under California's Unfair Competition Law ("UCL"). Dkt. No. 63. The Court incorporates the factual and procedural discussions from its prior Order here. Based on the supplemental briefing, and the parties' earlier briefing and argument, the plaintiffs' Motion for Summary Judgment on their Ninth Cause of Action is GRANTED.

## DISCUSSION

The Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted). The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

## I. STANDING

The Court finds that the plaintiffs have standing under the UCL. "[S]tanding is limited to any person who has suffered injury in fact and has lost money or property as a result of unfair competition." *Kwikset Corp. v. Super. Ct. of Orange Cnty.*, 51 Cal. 4th 310, 320-21 (2011) (quotation marks omitted); CAL. BUS. & PROF. CODE § 17204. "There are innumerable ways in which economic injury from unfair competition may be shown. . . . [And the law does not] purport to define or limit the concept of 'lost money or property,' nor can or need we supply an exhaustive list of the ways in which unfair competition may cause economic harm." *Id.* at 323. Attorney's fees accrued in bringing a UCL action are insufficient to establish standing. *Cordon v. Wachovia Mortgage, a Div. of Wells Fargo Bank, N.A.*, 776 F. Supp. 2d 1029, 1039 (N.D. Cal. 2011).

However, attorney's fees accrued in past actions brought alleging violation of the UCL are sufficient to establish standing. *Koller v. West Bay Acquisitions, LLC*—a case from this district identified by the plaintiffs in their supplemental briefing—is on point. No. 12-cv-117, 2012 WL 2862440 (N.D. Cal. July 11, 2012). The plaintiff in *Koller* argued that the defendants deceptively represented that the plaintiff owed them money, and thus violated the UCL, among other claims. *Id.* at *7. To defend against the defendants' debt collection efforts, the plaintiff hired attorneys to research his matter and to respond to demands sent by the defendants. *Id.* at *8. The Honorable Charles Breyer held that "Plaintiff's costs, expended to discover whether Plaintiff was required to pay [the alleged debt] and defend himself against Defendants' collection efforts, constitute economic injury as defined in *Kwikset*, as an expense that occurred that would have otherwise been unnecessary." *Id.* Judge Breyer explained that "costs expended to *defend* against litigation are very different than costs expended to file suit." *Id.* (emphasis added). Thus, "Plaintiff has sufficiently alleged economic harm . . . [and] injury in fact and he has standing under the UCL." *Id.*

Similarly, in *Janti v. Encore Capital Group, Inc.*, No. 09-cv-1969-JLS, 2010 WL 3058260, at *7 (S.D. Cal. Aug. 3, 2010), the court held that where "Plaintiff paid a $50.00 filing fee to defend herself in a state court action brought by one of the Defendants for debt collection," that "definitively identifies money lost sufficient to assert a UCL claim," as well as injury in fact.

2

Likewise, in *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-cv-1392-JLS, 2009 WL 6527758, *7-8 (S.D. Cal. Nov. 23, 2009), the court held that where "the complained-of events caused Plaintiff to incur legal expenses in defense of the collection action filed in state court," both injury in fact and lost money are met. The principles articulated in *Koller*, *Janti*, and *Tourgeman* apply here.

The defendants do not identify any relevant cases to the contrary or sufficiently distinguish the cases cited by the plaintiffs from the facts here. Rather than directly address the issue presented by the Court's Order and rebut the plaintiffs' arguments, the defendants spend most of their time arguing that the plaintiffs are not entitled to a remedy. In their only attempt to address the issue presented, the defendants state that "Plaintiffs fail to mention . . . [that] the court in *Tourgeman* invited further briefing from the parties on standing under the UCL and thereafter held that the ***plaintiff lacked standing*** to bring a UCL claim," apparently wishing the Court to think that the same complaint was at issue. Def.'s Supp. Reply Br. 3 (original emphasis). However, it is the defendants who fail to mention that the passage they cite refers to a completely different complaint. As the court in *Tourgeman* continued to say, the earlier order "is inapposite to the present issue as it pertains to Plaintiff's Second Amended Complaint, which is not the operative complaint here, and, critically, did not contain" the same allegations; indeed, the two orders were not even decided by the same judge. *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-cv-1392-CAB, 2012 WL 1327824, at *6 (S.D. Cal. Apr. 17, 2012).

The Court finds the reasoning in *Koller* persuasive and follows its holding. The plaintiffs have standing under the UCL to pursue their claim.

**II.     "Unlawful" Prong**

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." *Daugherty v. Am. Honda Motor Co., Inc.*, 51 Cal. Rptr. 3d 118, 128 (Ct. App. 2006). "An employer's use of an illegal noncompete agreement [] violates the UCL." *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575 (2009). Here, there is no doubt that the defendants' noncompete agreements are illegal under California law—indeed, the defendants admitted as much. Opp'n 7. Thus, their use of the agreements, by definition, violates the UCL.

### III. "Unfair" Prong

The "unfair" prong requires proving either (1) a practice that "offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and that is "tethered to specific constitutional, statutory or regulatory provisions," *Bardin v. Daimlerchrysler Corp.*, 39 Cal. Rptr. 3d 634, 642, 645 (Ct. App. 2006) (quotations omitted); or (2) that "the utility of the defendant's conduct [is outweighed by] the gravity of the harm to the alleged victim," *Schnall v. Hertz Corp.*, 93 Cal. Rptr. 2d 439, 456 (Ct. App. 2000).

The Supreme Court of California has affirmed that "section 16600"—the law prohibiting noncompete agreements—"represents a strong public policy of the state." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 949 (2008); *see also KGB, Inc. v. Giannoulas*, 104 Cal. App. 3d 844, 848 (Ct. App. 1980); *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal. App. 3d 668, 673 (Ct. App. 1971). By using noncompete agreements, the defendants engaged in a practice that "offends an established public policy" of California. Again, their use of such agreements violates the UCL.

### IV. "Fraudulent" Prong

The "fraudulent" prong of the UCL "require[s] only a showing that members of the public are likely to be deceived." *Daugherty*, 51 Cal. Rptr. 3d at 128. Because the plaintiffs have not alleged, nor is there evidence, that the defendants' use of noncompete agreements was in any way fraudulent, the plaintiffs have not established that they are entitled to judgment as a matter of law under the "fraudulent" prong of the UCL.

### V. Whether The Plaintiffs Are Entitled To Relief

The UCL only provides for restitution or injunctive relief. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) (citation omitted). Restitution is the "return [of] money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person." *Id.* Here, the money that the plaintiffs lost is in the hands of their attorneys, not the defendants. Thus, the plaintiffs are not entitled to restitution from the defendants. Indeed, the plaintiffs' Reply to Defendants' Supplemental Brief does not argue that

4

they are entitled to restitution. Dkt. No. 69. Therefore, the remaining issue is whether the plaintiffs are entitled to injunctive relief.

This case presents the unusual situation in which the defendants, by their own admission, used an agreement that violates California law, but their CEO declared under penalty of perjury that they will not enforce it any longer, at least with respect to the plaintiffs. Brodie Decl. ¶ 5. As a result, the plaintiffs are arguably no longer in danger of being accused of violating the agreements; however, they have suffered monetary losses due to the defendants' attempts to enforce those agreements outside of California and have standing to bring a UCL claim.

"Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986), *modified by* 810 F.2d 1517 (9th Cir. 1987). "Federal courts are not precluded from affording relief simply because neither the state Supreme Court nor the state legislature has enunciated a clear rule governing a particular type of controversy." *Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir. 1989) (citation omitted).

The only case of which the Court is aware that appears somewhat analogous is *Dowell*, a Court of Appeal of California case, which this Court referenced in its previous order.[1] There, the plaintiff sought declaratory and injunctive relief based on the defendant's use of noncompete agreements. The trial court granted summary adjudication on the plaintiff's cause of action seeking a declaration that the noncompete agreements were unlawful, but struck the plaintiff's request for a "permanent injunction seeking to enjoin [the defendant] from attempting to enforce such clauses against any current or former California employee." 179 Cal. App. 4th at 570. After additional briefing, "the trial court concluded that [the plaintiff] had no standing to seek a permanent injunction. The court then signed an order denying the requested permanent injunction 'in the exercise of its discretion' for the following reasons: (1) the noncompete and nonsolicitation clauses . . . had already expired by their terms; (2) 'the inherent difficulty in fashioning an injunction of the nature sought'; (3) the injunction sought would 'affect agreements with persons

---

[1] The Court notes that the court of appeal has indicated that portions of its opinion should not be cited as authority. Accordingly, the Court will not rely on those portions here.

not before the Court and whose interests are not represented in this litigation'; (4) [the plaintiff] lacked standing under section 17203 to obtain an injunction that would affect agreements of persons not before the court; and (5) the injunction sought was inconsistent with the court's prior adjudication that the [declaratory judgment and UCL] causes of action were limited to [the individual employees]." *Id.* at 573.

The court of appeal affirmed, but in doing so held that the noncompete agreements were void as a matter of law due to California's "strong public policy" against them. *Id.* at 575. It further held that "that their use violates section 17200," i.e., the UCL. *Id.*

As discussed above, unlike the plaintiffs in *Dowell*, the plaintiffs here *do* have standing under the UCL. At least one of the noncompete agreements is still in effect. The current CEO's declaration that the defendants will not enforce the agreements may be of limited value because a future officer may decide to reverse course. It is especially telling that the defendants have not simply nullified the agreements despite this lawsuit and the significant motion practice that has occurred. Thus, the plaintiffs here may be entitled to injunctive relief.

The Court predicts that the Supreme Court of California would find that the plaintiffs here are entitled to injunctive relief. As noted above, the state and its courts have a "strong public policy" against the use of noncompete agreements. It would be both unjust and perverse for a defendant to use such illegal agreements, cause another party to suffer substantial monetary harm, and then escape liability merely by making a declaration that it would not seek to enforce such an agreement. This is especially true where the defendant has in fact attempted to enforce that agreement in two separate lawsuits, as was the case here. Only after the plaintiffs filed suit in California, where such agreements are illegal, did the defendants submit the declaration (and even then, the declaration did not state that the agreements were void). Despite the apparent lack of "a clear rule governing [this] particular type of controversy," *id.*, the Court finds that the plaintiffs are entitled to judgment as a matter of law.

The defendants point to no cases supporting the argument that the "plaintiffs cannot obtain injunctive relief." Def.'s Supp. Br. at 3. The defendants cite to *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1041 (9th Cir. 1999), for the proposition that "Past injury may entitle the victim to

6

1   relief in the form of damages, but it is simply insufficient to obtain an injunction." That case
2   contains no such quote. The defendants are apparently quoting *Nava v. City of Dublin*, 121 F.3d
3   453, 459 (9th Cir. 1997), a case that has been overturned—by *Hodgers-Durgin*. In any event, both
4   those cases deal with Article III standing, not entitlement to injunctive relief under the UCL.

5   *Krzyzanowsky v. Orkin Exterminating Co., Inc.*, No. 07-cv-05362-SBA, 2009 WL 481267,
6   at *13 (N.D. Cal. Feb. 24, 2009), which the defendants cite, actually supports the plaintiffs. The
7   defendants cite that case for the proposition that the UCL "cannot be used . . . to enjoin an event
8   which has already transpired; a showing of threatened future harm or continuing violation is
9   required[,]" "absent a showing that past violations will probably recur." *Id.* (original punctuation).
10  The state court case which *Krzyzanowsky* cites, *People v. Toomey*, held that a "trial court [has]
11  broad authority to fashion a remedy that will prevent unfair trade practices and will deter the
12  defendant and others from engaging in such practices in the future." 157 Cal. App. 3d 1, 20 (Ct.
13  App. 1984). Here, while the defendants declared that they would not seek to enforce the
14  noncompete agreements, they did not disavow or void them. Thus there is a "continuing
15  violation" of California's statute prohibiting such agreements. It is worth noting that while the
16  defendants' counsel stated that it would not seek to enforce such agreements against the plaintiffs
17  only, counsel did not represent that the defendants would not seek to enforce any outstanding
18  agreements against other parties in the future, that the defendants would void any other such
19  agreements in existence, or that the defendants would no longer enter into such agreements in the
20  future. Thus, neither *Krzyzanowsky* nor *Toomey* weigh against injunctive relief under these
21  circumstances.

22  Finally, *DeLodder v. Aerotek, Inc.*, No. 08-cv-6044-CAS, 2009 WL 3770670, at *3 (C.D.
23  Cal. Nov. 9, 2009), is inapposite. There, the court found that the plaintiffs lacked standing to
24  pursue prospective relief because they are not at risk of not being paid overtime wages and
25  benefits since they are no longer employees of the defendant. Here, the nature of the alleged
26  violations is not the same—the plaintiffs are no longer employees of the defendants, but they are
27  still parties to the noncompete agreements. As of this Motion, none of the agreements have been
28  repudiated, and thus there is a "continuing violation." Furthermore, there is no evidence that the

7

defendants will not "engag[e] in such practices in the future." *Toomey*, 157 Cal. App. 3d 1, 20 (Ct. App. 1984). Injunctive relief is appropriate and the Court is "not precluded from affording relief simply because neither the state Supreme Court nor the state legislature has enunciated a clear rule governing [this] particular type of controversy." *Air-Sea Forwarders*, 880 F.2d at 186.

## CONCLUSION

For all the reasons above, the plaintiffs are entitled to judgment as a matter of law on their Ninth Cause of Action under the "unlawful" and "unfair" prongs of the UCL due to the defendants' use of noncompete agreements against the "strong public policy" of the State of California. While the defendants have declared that they will not seek to enforce the agreements, an injunction will further ensure compliance and demonstrate that a party may not act illegally and then escape liability by promising not to do it again.

The Court therefore ORDERS that the agreements in this case shall have no force or effect and ENJOINS the defendants from seeking to enforce the agreements in any manner, whether in this Court or any other adjudicative body.

**IT IS SO ORDERED.**

Dated: October 2, 2013

_____
WILLIAM H. ORRICK
United States District Judge