UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMTIAZ KHAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>K2 PURE SOLUTIONS, L.P., et al.,<br><br>    Defendants. | Case No. 12-cv-05526-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Re: Dkt. No. 73 |

**INTRODUCTION**

Plaintiffs Imtiaz Khan, Tim Morris, Rick Seisinger, and Neelesh Shah are suing defendants K2 Pure Solutions, L.P., K2 Pure Solutions NoCal, L.P., and K2 Pure Solutions Pittsburg, L.P. (collectively "K2"), claiming violations of the California Labor Code, violations of the California Business and Professions Code, unjust enrichment, and conversion, and seeking equitable relief related to non-compete agreements allegedly used by the defendants. K2 moves to dismiss with prejudice from the plaintiffs' Third Amended Complaint ("TAC") the Third Cause of Action alleging failure to pay overtime wages, the Fifth Cause of Action alleging failure to furnish accurate itemized wage statements, the Sixth Cause of Action alleging failure to provide meal and rest periods, the Seventh Cause of Action alleging conversion, and the Eighth Cause of Action alleging unjust enrichment. K2 also moves to strike portions of the TAC.[1]

For the reasons below, the motion to dismiss and motion to strike are GRANTED IN PART and DENIED IN PART.

---

[1] The motion to dismiss was filed late without any apparent justification. However, because the motion is fully briefed and in order to settle the pleadings at this relatively late date in the case, the Court exercises its discretion to manage the case and will adjudicate the motion.

**FACTUAL BACKGROUND**

For purposes of this Motion to Dismiss, the Court accepts as true the factual allegations in the TAC.[2]

K2 is a manufacturer of solutions used for water purification and disinfection. TAC ¶ 16. The plaintiffs are all former employees of K2. TAC ¶ 17. K2 hired Khan as a Plant Manager around December 2007, Morris as a Site General Manager around October 2008, Seisinger as a Production Manager around September 2010, and Shah as an Instrumentation and DCS Controls Engineer around June 2008. TAC ¶ 17. As a condition of their at-will employment, they were required to sign non-compete and confidentiality agreements with K2. TAC ¶ 18. The agreements state that for one year following the end of the plaintiffs' employment with K2, the plaintiffs will not be employed by "any person or entity which (A) competes with [K2] in the manufacture, processing or distribution of bleach and related chemical products to commercial customers and (B) is located or has operations within 300 miles of any existing plant operated by [K2] or any location [K2] has specifically identified for a future plant." TAC ¶ 33. Further, the agreements require the plaintiffs not to "[s]olicit, hire, recruit, or otherwise engage the services of any person who then currently is, or who at any time during [their] employment with [K2] was, an employee or independent contractor of [K2], or otherwise encourage or induce any such person to discontinue his or her relationship with [K2]." TAC ¶ 34.

K2's Employee Handbook has a vacation policy that applies only to employees protected by the California Labor Code (or "non-exempt" employees), which provides that "[n]on-exempt full time employees (those who generally work 40 or more hours per week) accrue 80 hours of paid vacation each full year of employment. Non-exempt employees accrue 3.08 hours of paid vacation per bi-weekly pay period." TAC ¶ 19. In letters to the plaintiff's counsel, K2 asserted that Khan, Morris, and Seisinger are subject to the policy and demanded that they reimburse K2 for payments that they allegedly received for vacation hours exceeding their limit. TAC ¶ 19. The plaintiffs argue that these letters are admissions that Khan, Morris, and Seisinger are non-exempt

---

[2] The changes in the TAC from the Second Amended Complaint ("SAC") appear to relate to Morris only.

employees.

K2 classified Morris as an exempt employee "within four years prior to the filing of this lawsuit," but he "was a 'manager' in title only . . . particularly during the last several years of his employment" because he "did not regularly perform exempt duties, or exercise the requisite independent judgment and discretion in the performance of his job duties." TAC ¶ 20. "Morris initially worked for K2 as a Site General Manager" and "was responsible for working directly with the Delta Diablo Sanitary District and Dow Chemical to develop and obtain approval for a plan to utilize Dow's wastewater allotment for K2's use." TAC ¶ 21. He worked with municipal agencies to "develop a plan and obtain the necessary permits" to properly dispose of waste and "to prepare, submit and obtain approval for K2's CEQA Mitigated Negative Declaration for the plant." TAC ¶ 21. "Morris was also responsible for the recruitment and hiring of a team to design and operate K2's Pittsburg, California[,] plant, including the Production Manager (Seisinger), Maintenance Manager, Laboratory Manager, and all operations, maintenance and lab personnel." TAC ¶ 21. He "was vested with and exercised independent judgment and discretion with respect to matters of importance." TAC ¶ 21.

Around February 2011, however, K2's chief executive officer, Howard Brodie, and K2's executive chairman, David Cynamon, "specifically demoted Morris [to Environmental Health & Safety Manager] and stripped him of authority and discretion following his refusal to follow their direction to terminate an employee for asking questions concerning his wages." TAC ¶¶ 20, 22. Morris refused to fire the employee because he felt that doing so was illegal, and also refused to fire several other employees "for the purpose of providing cover," which he was also asked to do. TAC ¶ 22. After that, he was no longer allowed to perform the duties he previously had as Site General Manager and was stripped of supervisorial responsibility. TAC ¶ 22. "Cynamon and Brodie relegated Morris to performing busy work that merely involved executing their decisions without accepting any of his input or suggestions."[3] TAC ¶ 22. Morris "spent a great deal of his

---

[3] This included "manual and menial tasks like ordering equipment and supplies, performing routine safety inspections that merely required Morris to observe whether equipment was visually leaking or operating at a specified temperature, calibrating gas detectors, maintaining or filing training records for employees, documenting and performing routine investigations of safety

time serving as a messenger between outside consultants and Cynamon and Brodie." TAC ¶ 22. They "completely removed any ability or authority of Morris to exercise independent judgment or discretion" and "refused and would not allow Morris to even offer his opinion or input regarding any issue that he was couriering information about." TAC ¶ 22. He "was stripped of all responsibility and authority for managing employees or other plant operations," and could not provide any managerial guidance." TAC ¶ 22. "Morris, therefore, was not primarily engaged in exempt duties to qualify for exempt status." TAC ¶ 20.

Morris was constantly at the "beck and call" of Cynamon and Brodie, including nights and weekends. TAC ¶ 23. He thus often worked more than eight hours a day and more than forty hours a week. TAC ¶ 23. "On average," he worked between nine and ten hours a day and fifty or more hours a week without overtime compensation. TAC ¶ 23. "K2, including specifically, Brodie and Cynamon were aware of the hours that Morris was working, as they were the individuals often requiring that he be responsive to their requests." TAC ¶ 57. K2 "did not have a policy providing exempt employees with meal or rest breaks," and Morris often had to work during his meal period and breaks. TAC ¶ 74. "K2 knowingly and willfully failed to pay overtime wages earned and due to Morris." TAC ¶ 58.

When the plaintiffs heard rumors that K2 was planning to lay them off, they resigned from K2—Morris in June 2012, Khan in September 2012, and Shah in October 2012. TAC ¶¶ 26-28. None were paid the wages owed to them, including "unused, accrued vacation." TAC ¶¶ 26-28. They were each then "independently recruited to work for Molycorp [at its Mountain Pass, California, facility] by Molycorp or its agents." TAC ¶¶ 25, 30. Molycorp is a rare earth mining, engineering, and processing company. TAC ¶ 30. The plaintiffs did not recruit or solicit any K2 employee, including one another, to leave K2 to join Molycorp. TAC ¶ 38.

"Shortly after" Khan, Morris, and Seisinger began working at Molycorp, K2 "began threatening to interfere" with their employment there. TAC ¶ 31. K2 sent them letters on

---

incidents at the plant, filling out routine and rote applications for air permits that merely required filling in government applications based on prior submissions, scheduling stack testing, and maintaining or filing required permit logs." TAC ¶¶ 22, 56.

September 20, 2012, claiming that they were in violation of the Noncompetition Agreements and demanding that they abide by its provisions. TAC ¶¶ 32, 35. On October 10, 2012, David Cynamon, K2's Executive Chairman, called Khan to urge him to leave Molycorp to return to K2, "implying that there may be consequences if Khan did not return." TAC ¶ 36.

The plaintiffs believe that K2 intends to prevent Molycorp from employing them or to seek damages or other relief from them for violating the non-compete agreements due to their employment at Molycorp and alleged recruitment of one another. TAC ¶ 37. The plaintiffs argue that the agreements are unenforceable under California law and that "K2's threats to enforce" them violate California law and public policy, and are an unlawful business practice and illegal restraint of trade. TAC ¶ 38. They also argue that by requiring current and former employees to sign the agreements as a condition of employment, K2 is violating the California Labor Code and other statutes. TAC ¶ 39.

The plaintiffs bring nine causes of action for (1) a declaration that the agreements are invalid and unenforceable under California Business and Professions Code Section 16600 and an injunction against K2's "interfering" with the plaintiffs' employment with Molycorp; (2) a declaration that the agreements are overbroad and unenforceable, and an injunction against K2's "interfering" with the plaintiffs' employment with Molycorp; (3) failure to pay overtime in violation of California Labor Code Sections 510, 558, and 1194 and Wage Order No. 4-2001; (4) failure to pay all wages upon resignation in violation of California Labor Code Section 202 and Wage Order No. 4-2001; (5) failure to furnish accurate itemized wage statements in violation of California Labor Code Section 226 and Wage Order No. 4-2001; (6) failure to provide meal periods and rest breaks in violation of California Labor Code Sections 226.7 and 512 and Wage Order No. 4-2001; (7) conversion; (8) unjust enrichment; and (9) violation of California Business and Professions Code Section 17200. The plaintiffs seek a declaration that California law governs the enforceability of the agreements and that the agreements are void; an injunction against enforcing the agreements and to stop K2's illegal practices; restitution; and various damages, penalties, and fees.

**PROCEDURAL BACKGROUND**

The Court incorporates by reference the procedural background in its Order Granting Motion to Dismiss Third, Fifth, Sixth, and Seventh Causes of Action of Second Amended Complaint ("Order"). Dkt. No. 62.

On July 19, 2013, the plaintiffs moved for partial summary judgment on the First, Second, and Ninth Causes of Action of the SAC.[4] Dkt. No. 45. On September 3, 2013, the Court denied the plaintiffs summary judgment on the First and Second Causes of Action and ordered supplemental briefing on whether the plaintiffs have statutory standing to bring their Ninth Cause of Action. Dkt. No. 63. The parties submitted supplemental briefing, and on October 2, 2013, the Court granted the plaintiffs summary judgment on their Ninth Cause of Action. Dkt. No. 70. On October 7, 2013, K2 moved for leave to file a motion for reconsideration of the Court's grant of summary judgment, which the Court granted on October 9, 2013. Dkt. Nos. 71, 72. The parties filed briefs on the motion for reconsideration. On October 31, 2013, while the motion for reconsideration remained pending, K2 appealed the Court's grant of summary judgment to the United States Court of Appeals for the Ninth Circuit. Dkt. No. 82. On December 2, 2013, the Court granted the motion for reconsideration and vacated its grant of summary judgment to the plaintiffs on their Ninth Cause of Action. Dkt. No. 94.

On September 3, 2013, the Court granted K2's partial motion to dismiss the SAC. On September 23, 2013, the plaintiffs filed their TAC. K2 now moves to dismiss with prejudice the Third Cause of Action alleging failure to pay overtime pay; the Fifth Cause of Action alleging failure to furnish accurate itemized wage statements; the Sixth Cause of Action alleging failure to provide meal and rest periods; the Seventh Cause of Action alleging conversion; and the Eighth Cause of Action alleging unjust enrichment. They also move to strike portions of the TAC. The Court heard argument on the motions on November 27, 2013. Dkt. No. 93.

**LEGAL STANDARD**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

---

[4] The numbering of the causes of action in the TAC is identical to that of the SAC.

pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), drawing all "reasonable inferences" from those facts in the nonmoving party's favor, *Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005). A complaint may be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement," *id.* (quotation marks and brackets omitted), and the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations," *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "A matter is immaterial if it has no essential or important relationship to the claim for relief pleaded. A matter is impertinent if it does not pertain and is not necessary to the issues in question in the case." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Prog.*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citations omitted). "Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice. The possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw unwarranted inferences at trial is the type of prejudice that is sufficient to support the granting of a motion to strike." *Ayat v. Societe Air France*, No. 06-cv-1574, 2007 WL 1840923, at *1 (N.D. Cal. June 27, 2007) (citations omitted).

**DISCUSSION**

## I. THE MOTION IS GRANTED WITH RESPECT TO KHAN, SEISINGER, AND SHAH EXCEPT AS TO THE EIGHTH CAUSE OF ACTION.

The Order detailed numerous deficiencies in the SAC, but the plaintiffs did not amend any allegations regarding Khan, Seisinger, or Shah. The Court's analysis of the TAC with respect to those plaintiffs is the same as its analysis of the SAC. The Court GRANTS the motion to dismiss WITH PREJUDICE as to those three plaintiffs on the Third, Fifth, Sixth, and Seventh Causes of Action.

## II. MISCLASSIFICATION OF MORRIS

The plaintiffs substantially amended the SAC with respect to Morris, and the TAC adequately pleads that Morris is a non-exempt employee under the California Labor Code.[5] The California Labor Code provides employees with certain rights, such as overtime wages and periodic breaks, unless an employee falls under three exemptions: the professional exemption, the executive exemption, and the administrative exemption. CAL. CODE REGS. tit. 8, § 11040(1)-(3). The Labor Code exempts employees who, among other things, "customarily and regularly direct[] the work of two or more other employees," "customarily and regularly exercise[] discretion and independent judgment," or are "primarily engaged in an occupation commonly recognized as a learned or artistic profession." CAL. CODE REGS. tit. 8, § 11040(1)-(3). As the Ninth Circuit stated, "In order to exercise 'discretion and independent judgment,' the employee must be involved in making decisions related to 'matters of consequence,' and which are of 'real and substantial significance to the policies or general operations of the business of the employer or the employer's customers.'" *D'Este v. Bayer Corp.*, 565 F.3d 1119, 1125 (9th Cir. 2009).

The TAC adds significant factual enhancement to show that Morris was not exempt from the California Labor Code after his alleged demotion. As detailed above, the TAC alleges that Morris's duties include "manual and menial tasks like ordering equipment and supplies,

---

[5] The plaintiffs argue that because exemption from the California Labor Code is an affirmative defense, they need not allege specific facts to establish that they are entitled to the protections of the Code. Opp'n 3-4. The Court has already rejected this argument. Order 7.

1 performing routine safety inspections that merely required Morris to observe whether equipment
2 was visually leaking or operating at a specified temperature, calibrating gas detectors, maintaining
3 or filing training records for employees, documenting and performing routine investigations of
4 safety incidents at the plant, filling out routine and rote applications for air permits that merely
5 required filling in government applications based on prior submissions, scheduling stack testing,
6 and maintaining or filing required permit logs." TAC ¶¶ 22, 56. The rote nature of Morris's
7 alleged duties make it plausible that he was not "making decisions related to 'matters of
8 consequence,'" nor were his actions ones of "real and substantial significance to the policies or
9 general operations of the business." *D'Este*, 565 F.3d at 1125. Unlike the SAC, the TAC gives
10 more than "a formulaic recitation of the elements of a cause of action," at least with regard to
11 Morris. *Iqbal*, 556 U.S. at 678.

12 K2 argues that the job duties that Morris alleged he did, both as Site General Manager and
13 Environmental Health & Safety Manager, "typically qualify as exempt work and, at a minimum,
14 are consistent with K2's classification of Morris as exempt." Br. 13-14. It cites to California law,
15 which states that the "executive" exemption applies if the employee's "duties and responsibilities
16 involve the management of the enterprise in which he/she is employed or of a customarily
17 recognized department or subdivision thereof." CAL. CODE REGS. tit. 8, § 11010(1)(A)(1)(a).
18 Additionally, the "administrative" exemption applies if the employee performs "office or non-
19 manual work directly related to management policies or general business operations of his
20 employer or his employer's customers." CAL. CODE REGS. tit. 8, § 11010(1)(A)(2)(a)(i). K2
21 points out that California law regarding exempt employees parallels the same standards under the
22 federal Fair Labor Standards Act. CAL. CODE REGS. tit. 8, §§ 11010(1)(A)(1)(e),[6]

---

[6] Under federal law, management activities include: "activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance

11010(1)(A)(2)(f)[7]. Under federal law, management work is "work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201.

K2 points out that the plaintiffs' allegation that Morris's "documenting and performing routine investigations of safety incidents at the plant," TAC ¶ 22, corresponds with the statutorily defined management activity of "providing for the safety and security of the employees or the property," 29 C.F.R. § 541.102. Morris's "ordering equipment and supplies," TAC ¶ 22, corresponds with "determining the type of materials, supplies, machinery, equipment or tools to be used," 29 C.F.R. § 541.102. "[M]aintaining or filing training records for employees," TAC ¶ 22, corresponds with "personnel management" and "human resources," 29 C.F.R. § 541.201. And "filling out routine and rote applications for air permits . . . and maintaining or filing required permit logs," TAC ¶ 22, corresponds with "monitoring or implementing legal compliance measures," 29 C.F.R. § 541.102.

Additionally, K2 argues that the plaintiffs' allegations about Morris "are mere conclusions and unsupported assertions." Br. 14 (citing *Jimenez v. Allstate Ins. Co.*, No. 10-cv-8486, 2011 WL 61611, at *2 (C.D. Cal. Jan. 7, 2011)). His alleged duties "are consistent with K2's classification of Morris as an exempt employee." Br. 14. K2 argues that the plaintiffs only allege that Morris's responsibilities were reduced, not that he "had no responsibility or decision-making authority" any longer, and that even after Morris was demoted, his execution of the CEO's and chairman's orders support the conclusion that he is an exempt employee. Br. 15. It argues that, "[a]s the highest-ranking manager of health and safety at K2's plant, Morris had to exercise discretion and independent judgment every time a safety incident occurred." Br. 15-16. K2 points out that employees were coming to Morris for input and sought "managerial guidance" from him.

---

measures." 29 C.F.R. § 541.102.
[7] Under federal law, management activities include work related to "tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201.

1    Br. 16 (citing TAC ¶ 22).

2        K2's arguments fail because this motion relates to the pleadings, and the Court is bound to accept the allegations in the TAC as true. As K2 appears to recognize, the many portions of the Code of Federal Regulations to which it cites merely consist of "[f]actors to consider when determining whether an employee exercises discretion" and only apply "[g]enerally"—that is to say, they are not a mandatory or dispositive list. *See, e.g.*, 29 C.F.R. §§ 541.102, 541.202. The mere fact that some of the language in the TAC and the Code of Federal Regulations may overlap means little because the factors identified in the law "must be applied in the light of all the facts involved in the particular employment situation in which the question arises," 29 C.F.R. §§ 541.202, an inquiry unsuitable at the motion-to-dismiss stage given the detailed nature of the plaintiffs' new allegations concerning Morris. *See Perine v. ABF Freight Sys., Inc.*, 457 F. Supp. 2d 1004, 1012 (C.D. Cal. 2006) ("whether an employee is exempt or non-exempt is an issue of fact"). The plaintiffs' allegations do not need to be airtight and logically unassailable. Rather, the Court must merely "determine if [the allegations] plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 682. Upon repleading, the plaintiffs meet this standard with regard to Morris.

    The cases cited by K2 in support of its argument are inapplicable. Some were at summary judgment stage and are therefore of less help here. *See, e.g.*, *Wilbur v. Silgan Containers Corp.*, No. 06-cv-02181, 2008 WL 3863700 (E.D. Cal. Aug. 19, 2008). In addition, *Whiteway v. FedEx Kingo's Office and Print Servs.*, No. 05-cv-2320, 2007 WL 2408872, at *8 (N.D. Cal. Aug. 21, 2007), was reversed by the Ninth Circuit, 319 Fed. App'x 688 (9th Cir. 2009), but K2 did not note this. And K2 cites *Perez v. Time Moving & Storage Inc.*, No. 08-cv-2775, 2008 WL 5662070 (S.D.N.Y. Jan. 15, 2008), for the proposition that "the pleader needs to amplify his claim with specific factual allegations in order to render the claim plausible" and "allegations tending to show that the work [the plaintiff] performed for their [ ] employer falls outside the [applicable] exemption." Br. 17; Reply 5. That is what the plaintiffs have done for Morris.

### III. THIRD CAUSE OF ACTION: FAILURE TO PAY OVERTIME WAGES

    The plaintiffs adequately state a claim under California Labor Code Sections 510, 558, and 1194 and Wage Order No. 4-2001 for Morris. These statutes mandate that employers pay 50

11

1    percent higher wages when an employee works more than eight hours a day or 40 hours a week,
2    and provide a cause of action if employers fail to do so. The TAC states that "Morris consistently
3    worked more than eight hours in a day, and more than forty hours in a week . . . . On average,
4    specifically following the demotion, Morris worked on average between 9 and 10 hours per day
5    and fifty plus hours in a week without compensation for overtime." TAC ¶ 23. "Brodie and
6    Cynamon required Morris to be available anytime that they required him, including during
7    nights[,] weekends[,] and when he was on a lunch or break." TAC ¶ 23. In addition, "Brodie and
8    Cynamon were aware of the hours that Morris was working, as they were the individuals often
9    requiring that he be responsive to their requests." TAC ¶ 57. These factual allegations are enough
10   to show failure to pay overtime wages.

11       Judges in this district have found similar allegations sufficient. In *Schneider v. Space
12   Sys./Loral, Inc.*, the court found sufficient allegations that the plaintiff "often worked more than 8
13   hours in a day in order to complete his required assignments"; that "there were times when, due to
14   his workload, he had to work more than 12 hours in a day"; and that "there were periods when,
15   due to issues he had to deal with on the manufacturing floor, he had to work in excess of 12–hour
16   days." No. 11-cv-2489-MMC, 2012 WL 1980819, at *2 (N.D. Cal. June 1, 2012). In *Muan v.
17   Vitug*, the court found sufficient allegations that "after completing his daily 8-hour shift, [the
18   plaintiff] was required to come back . . . every weeknight . . . until his shift started again the next
19   morning. He was not paid for any of the hours between his shifts." No. 13-cv-331-PSG, 2013
20   WL 2403596, at *2 (N.D. Cal. May 31, 2013). Here, the plaintiffs provide similar averments for
21   Morris and therefore state a claim for relief.

22       The defendants argue that "Plaintiffs do not allege a single fact to support a reasonable
23   inference that Morris ***actually worked overtime***" or that K2 "knowingly and willfully" failed to
24   pay overtime wages to Morris. Br. 17-18 (original emphasis). Unlike the SAC, in which the
25   plaintiffs merely recited language drawn from the statutes by only alleging that Morris "regularly
26   worked more than eight (8) hours in a workday and/or more than forty (40) hours in a work
27   week," they now specify the extent to which Morris worked overtime by asserting that he worked,
28   on average, between nine and ten hours per day and more than fifty hours per week. They also

plead additional facts to support their allegation that K2, through Brodie and Cynamon, was aware that Morris was working overtime. For example, the TAC states that Brodie and Cynamon required Morris to be available during nights and weekends but did not pay him for his overtime work. TAC ¶ 23. While this allegation does not conclusively establish knowledge, at this stage all that the plaintiffs need to plead is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and it is reasonable to infer based on the allegations that an employer who requires an employee to work nights and weekends knows that the employee is likely working overtime.[8] Morris states a claim for overtime.

## IV. FIFTH CAUSE OF ACTION: FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS

The plaintiffs fail to state a claim under Section 226 of the California Labor Code. Under that statute, an employer must provide employees, semimonthly or with each wage payment, a statement listing information such as gross wages, hours worked, deductions, net wages, and the pay period. CAL. LAB. CODE § 226 (West 2013). To recover under Section 226, "an employee must suffer injury as a result of a knowing and intentional failure by an employer to comply with the statute." *Price v. Starbucks Corp.*, 122 Cal. Rptr. 3d 174, 179 (Ct. App. 2011). Alleging a mere omission of one of the required pieces of information is insufficient to state a claim; rather, the plaintiff must plead "*an injury* arising from the missing information." *See id.* "[A] very modest showing will suffice." *Jaimez v. DAIOHS USA, Inc.*, 105 Cal. Rptr. 3d 443, 460 (Ct. App. 2010).

The Court explained in the Order what the plaintiffs must plead to survive a motion to dismiss. But nothing in the TAC with regard to wage statements is different from the SAC except the deletion of Seisinger from the allegations. *Compare* TAC ¶¶ 68, 69 *with* SAC ¶¶ 69, 70. The TAC still does not meet the "rather low" bar for pleading facts showing a violation of Section 226.

---

[8] The defendants repeatedly cite to the Court's statement in its Order noting that "[t]he plaintiffs do not plead what work they did but were not paid for, or give any sense about when or how this happened." Order 7. The plaintiffs did not need to answer those precise questions; rather, they are merely ways in which the plaintiffs may support their allegations with facts.

13

1  *Jaimez*, 105 Cal. Rptr. 3d at 460 (citing *Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042,
2  1050-51 (C.D. Cal. 2006)).

3  The plaintiffs' citation to *Yuckming Chiu v. Citrix Sys., Inc.*, No. 11-cv-1121, 2011 WL
4  6018278, at *6 (C.D. Cal. Nov. 23, 2011), does not help them because there, the plaintiff clearly
5  alleged that the defendant failed to furnish any wage statements at all. Here, however, as the
6  Court said in its Order, "the SAC is so devoid of facts that it even remains unclear whether K2
7  merely provided inaccurate statements or whether K2 provided no statements at all." And
8  although the plaintiffs argue that *Lopez v. Wendy's International, Inc.*, No. 11-cv-275, 2011 WL
9  6967932, at *9 (C.D. Cal. Sept. 19, 2011), supports them, in actuality, the plaintiffs' allegation is
10 less adequate than the claim dismissed in *Lopez* because Lopez alleged in her opposition that she
11 was complaining about the failure to furnish any wage statements, whereas here, the plaintiffs
12 were not so clear, as the Court previously pointed out. Given the failure to amend, this cause of
13 action is dismissed.

## V. SIXTH CAUSE OF ACTION: FAILURE TO PROVIDE MEAL AND REST PERIODS

The plaintiffs adequately state a claim under California Labor Code Sections 226.7 and 512 and Wage Order No. 4-2001 for Morris. California Labor Code Sections 226.7 and 512 and Wage Order No. 4-2001 "require an employer to provide an employee with a thirty-minute meal period if the employee works at least five hours and a ten-minute break for every four hours the employee works." *Angeles v. U.S. Airways*, No. 12-cv-05860-CRB, 2013 WL 622032, at *8 (N.D. Cal. Feb. 19, 2013). Here, the plaintiffs allege that "Defendants did not have a policy providing exempt employees with meal or rest breaks" and did not "in fact provide Morris with a meal period free from interruption during which he performed no work or the requisite rest breaks." TAC ¶ 74. "Morris was often asked during his meal period and breaks to perform work or to respond to inquiries, including specifically by Cynamon and Brodie." TAC ¶ 74. "Accordingly, Defendants not only routinely failed to provide nonexempt employee Morris rest and meal periods during his work days, but in many instances actively prevented him from enjoying such meal and rest periods by requiring him to perform work." TAC ¶ 74. These factual

1    allegations are enough to show that K2 failed to provide Morris with meal and rest periods.

2    In *Ambriz v. Coca Cola Co.*, the court found that the plaintiff adequately stated a claim by
3    pleading that "Defendant failed to provide him with an uninterrupted meal period of at least thirty
4    minutes, and that Defendant had a policy or practice of not providing members of the Meal Break
5    Subclass with such meal periods." No. 13-cv-03539-JST, 2013 WL 5947010, at *3 (N.D. Cal.
6    Nov. 5, 2013). In addition, the plaintiff pleaded that "when he worked shifts of ten hours or more,
7    Defendant failed to provide him with a second meal period and did not pay him premium wages,
8    and that Defendant had a policy or practice of not providing second meal periods and not paying
9    premium wages to [employees who worked] shifts of ten hours or more." *Id.* With regard to rest
10   breaks, the plaintiff pleaded "that Defendant did not provide him with a net rest period of ten
11   minutes per four hour work period, that Defendant maintained a policy of not providing him and
12   [other employees] with net rest periods of at least ten minutes per four hour work period, and that
13   Defendant failed to pay premium wages when the rest breaks were not provided." *Id.* at *5.
14   Based on these allegations, the court held that the "Plaintiff is not required to allege the non-
15   existence of something, such as meal breaks, with any greater specificity than he has done here,
16   because there is no more factual content Plaintiff *could* have alleged." *Id.* at *4 (citation and
17   quotation marks omitted). Here, the plaintiffs plead facts concerning Morris with greater
18   specificity than the plaintiff in *Ambriz*.

19   The defendants argue that while the plaintiffs allege that the defendants prevented Morris
20   from "enjoying his meal and rest periods because they required Morris to work, the plaintiffs fail
21   to allege "that K2 did anything to 'impede or discourage' Morris from *taking* meal or rest
22   periods." Br. 20. Quoting *Brinker Restaurant Corp. v. Superior Court of San Diego County*, the
23   defendants assert that "an employer must relieve the employee of all duty for the designated
24   period, but need not ensure that the employee does no work." 53 Cal. 4th 1004, 1034 (2012).

25   *Brinker Restaurant* does not undermine the plaintiffs' pleading with respect to Morris,
26   however. While it is true that an employer "need not ensure that the employee does no work,"
27   meaning that an employee may voluntarily choose to work through his meal period, the employer
28   must still "relieve its employee of all duty for an uninterrupted 30-minute period" and can "not

15

impede or discourage them" from taking such a period. *Id.* at 1038, 1040. Contrary to K2's assertion, the plaintiffs plead that Morris *was* discouraged and impeded from taking his breaks because he "was often asked during his meal period and breaks to perform work or to respond to inquiries." TAC ¶ 74. And while K2 argues that "Plaintiffs again fail to allege a single instance in which K2 actually denied or prevented Morris from taking a meal or rest break," Reply 9, a plaintiff "is not required to allege the non-existence of something, such as rest periods, with any greater specificity than he has done here." *Ambriz*, 2013 WL 5947010, at *5. The plaintiffs have pleaded much more than they did in their SAC, the defendants are adequately on notice of the wrongdoing of which they are accused, and the plaintiffs successfully state a claim for Morris.

## V. SEVENTH CAUSE OF ACTION: CONVERSION

The plaintiffs fail to state a claim for conversion. "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Farmers Ins. Exch. v. Zerin*, 61 Cal. Rptr. 2d 707, 709 (Ct. App. 1997) (citation omitted). "Money can be the subject of an action for conversion if a specific sum capable of identification is involved." *Id.*

As the Court stated in its previous Order, "If plaintiffs choose to replead this cause of action, they should specifically allege the basis for their claim and how a specific sum that was allegedly converted could be ascertained." Order 10. Plaintiffs made no effort to do this. Moreover, the Court grants the motion to dismiss the Seventh Cause of Action for conversion because it is, at best, duplicative of the Labor Code claims, and may not be available at all. Several courts have held that conversion is not a proper cause of action for violations of the California Labor Code. *See, e.g.*, *Madrigal v. Tommy Bahama Grp., Inc.*, No. 09-cv-8924, 2010 WL 4384235, at *6 (C.D. Cal. Oct. 18, 2010); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 618 (N.D. Cal. 2007); *Green v. Party City Corp.*, No. 01-cv-9681, 2002 WL 553219, at *5 (C.D. Cal. Apr. 9, 2002). The Court is not aware of any authority to the contrary, but because the parties failed to brief the issue, the Court reaches no conclusion on it. Since the plaintiffs did not attempt to amend the defects in its allegations, and, with regard to Morris, the

cause of action is redundant given that the Labor Code causes of action do state a claim, the Court grants the motion to dismiss the Seventh Cause of Action.

## VI. EIGHTH CAUSE OF ACTION: UNJUST ENRICHMENT

"Generally, federal courts in California have ruled that unjust enrichment is not an independent cause of action because it is duplicative of relief already available under various legal doctrines." *Vicuna v. Alexia Foods, Inc.*, No. 11-cv-6119-PJH, 2012 WL 1497507, at *3 (N.D. Cal. Apr. 27, 2012). Rather, it is "a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (Ct. App. 2004) (citations, quotation marks, and brackets omitted). "Thus, unjust enrichment is not a stand-alone claim under California law; it is a fall-back theory that would come into play only in the event of a finding of liability on some other non-contractual claim" or where there is an "absence of an adequate remedy at law." *Vicuna*, 2012 WL 1497507 at *3 (citations omitted).

Here, the Court has not dispensed with all the causes of action in this case. The plaintiffs' Fourth Cause of Action for failure to pay all wages upon resignation remains, and the Supreme Court of California has held that restitution is an available remedy for unpaid wages. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 177 (2000). In addition, the Court is allowing Morris's Third and Sixth Causes of Action to go forward. Thus dismissing the plaintiffs' unjust enrichment claim is unwarranted, and K2 has provided no concrete argument to the contrary.

## VII. MOTION TO STRIKE

K2 moves to strike certain portions of the TAC. First, it moves to strike the plaintiffs' request for declaratory relief in their First and Second Causes of Action because the Court "***has already ruled*** that Plaintiffs lack standing to bring their claims for declaratory relief." Br. 25 (original emphasis). Second, it moves to strike the plaintiffs' prayer for injunctive relief on behalf of "any other California employee" because the plaintiffs do not meet the requirements for representing third parties and the Court did not grant the plaintiffs leave to amend their prayer for relief. Br. 26 (citing TAC 19).

A court may only strike from a complaint portions that are "redundant, immaterial,

17

impertinent, or scandalous." FED. R. CIV. P. 12(f). The Ninth Circuit has held that a motion to strike should be denied if it is "really an attempt to have certain portions of [the] complaint dismissed or to obtain summary judgment against [the plaintiff] as to those portions of the suit— actions better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). While it is true that the Court has held that the plaintiffs are not entitled to declaratory relief for their First and Second Causes of Action, the plaintiffs' requests for relief are not "redundant, immaterial, impertinent, or scandalous," and K2 does not explain how they are. *Id.* at 974. Furthermore, K2 could have moved to dismiss those claims in this motion or could have made an independent motion for summary judgment, but it did not. A Rule 12(f) motion is not the appropriate vehicle for it to circumvent the Federal Rules of Civil Procedure. The motion to strike the First and Second Causes of Action is DENIED.

The Court GRANTS the motion to strike the plaintiffs' improper amendment of their prayer for relief because the amendment is impertinent and exceeds the scope of the Court's leave to amend. As the Ninth Circuit has stated, "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." When the Court issued its Order, it only allowed the plaintiffs leave to further support their Third, Fifth, Sixth, and Seventh Causes of Action. Order 10. It did not grant them leave to amend their prayer for relief. The improper amendment "do[es] not pertain, and [is] not necessary, to the issues in question" for which the Court gave leave to amend.

"Exceeding the scope of a court's leave to amend is not necessarily sufficient grounds for striking a pleading or portions thereof." *Lamumba Corp. v. City of Oakland*, No. 05-cv-2712, 2006 WL 3086726, at *4 (N.D. Cal. Oct. 30, 2006). However, where "Plaintiffs improperly, and without leave of court, add[] . . . [a] new prayer for relief," striking is warranted. *Concerned Citizens for a Safe Cmty. v. Office of Fed. Det. Tr.*, No. 09-cv-1409, 2011 WL 2971000, at *2 (D. Nev. July 19, 2011).

## CONCLUSION

For the reasons above, the motion to dismiss the Third and Sixth Causes of Action against

Morris, and the Eighth Cause of Action against all the plaintiffs, is DENIED. The motion to dismiss the Fifth and Seventh Causes of Action against Morris and the motion to dismiss the Third, Fifth, Sixth, and Seventh Causes of Action against the remaining defendants is GRANTED WITH PREJUDICE because the plaintiffs' failure to amend the TAC shows that amendment would be futile.

The motion to strike the First and Second Causes of Action is DENIED. The motion to strike the prayer for relief on behalf of "any other California employee" is GRANTED.

At the hearing on this motion, the Court ordered the parties to mediate before the Honorable Nathaniel Cousins. The Court ORDERS that no further discovery may be taken before mediation is completed. The parties shall notify the Court of the status of the case within three days after such mediation has occurred, after which the Court will hold a case management conference if necessary.

**IT IS SO ORDERED.**

Dated: December 4, 2013

WILLIAM H. ORRICK
United States District Judge

19